Argued and submitted September 29, 2000, reversed and remanded
February 28, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# ANDREI DAN,
*Appellant.*

(980634789; CA A104913)

20 P3d 829

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Eva S. Herrera, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Edmonds, Presiding Judge, and Armstrong, Judge, and Ceniceros, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals from convictions for aggravated animal abuse in the first degree, ORS 167.322, unlawful use of a weapon, ORS 166.220, and recklessly endangering another person, ORS 163.195. He assigns as error the trial court's admission of evidence about defendant's prior conduct toward his wife, its refusal to give the jury an instruction regarding the "choice of evils" defense, and its giving of a jury instruction requiring the jury to acquit defendant of more serious offenses before it could consider lesser-included offenses. We reverse.

■ We recite the evidence in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). Defendant lived in a house just off of Sandy Boulevard in Portland with his wife and children. His backyard bordered the yard of Randall Cox. Defendant's house and yard, as well as those of Cox, are within an Urban Growth zone within the city limits of Portland. Defendant's children often played in defendant's backyard. Cox had a 18-pound dog, Lady, that occasionally entered defendant's yard. Defendant's children had reported to defendant that Lady was in their yard at times, and defendant found dog droppings in his yard from time to time. Lady had never bitten or injured the children, but she had barked and behaved aggressively in the presence of other family members, scaring them. One of defendant's daughters was bitten by a different dog in the neighborhood shortly before the incident resulting in this case, and the testimony at trial established that several of defendant's children were fearful of dogs in general as a result.

On May 30, 1998, Lady entered defendant's yard while Cox was outside working in his garage. Defendant's children ran into their house, crying and upset, and told defendant that Lady was scaring them again. Defendant retrieved a .22 caliber rifle and ammunition, went into his backyard, and saw Lady there. He testified that Lady, from about 40 feet away, was coming toward him from across the yard and that he believed she might be "crazy" or "sick." He shot Lady three times, killing her almost instantly.

A patron of a drive-through window of a restaurant located behind defendant's residence heard the shots while waiting in her car to receive her food, and she commented on the noise to an employee of the restaurant, saying that it sounded like gunfire. Cox also heard the shots and entered his backyard in time to see defendant go back into his house with the gun. Cox saw Lady laying motionless in defendant's yard. After confirming that Lady was dead, Cox called the police, who arrested defendant.

Defendant was charged with aggravated animal abuse in the first degree, unlawful use of a weapon, and recklessly endangering another person. As part of the state's effort to establish that defendant acted maliciously in shooting Lady, the prosecutor questioned defendant at trial about his motivation in shooting the dog. Defendant testified that he had several motives: first, that Lady had defecated in his yard on many occasions, an activity that he wanted stopped; second, that Lady was attacking his children and had tried to attack him when he went into the yard; and third, that when he had approached Cox about keeping the animal contained, Cox had given defendant permission to shoot Lady if she entered defendant's yard again. A major theme of defendant's defense was that he had shot the dog to protect his children, and not out of maliciousness. While defendant was explaining his motivations, he testified, "I love my children more than the dog."[1] In rebuttal, the state offered evidence,

---

[1] Defendant testified:

"[The dog's multiple attempted attacks on me] isn't why I shoot the dog. Because I protect my kids. This is the point. This is the reason. Because I find out this dog is very danger. Every day some—if you saw—or—I'm not so big man, but I'm protect family. I find out something, catch, then kill him, my little girl on dog because the owner don't take care of him. And I talk to [Cox] thousand times. And he know of all my kids because scaring the dog—other dog, big dog bit the little girl. That's why I'm shooting."

On cross-examination, defendant testified:

"Q. Did you tell—did you make a statement that all dogs should be shot? Did you make that statement?

"* * * * *

"A. No. I love dogs.

"Q. You love them?

"A. Yeah. Back in my country, [G]erman sheep[dog]. What is—when I find some dog, it's like [Cox's] dog, very danger, no stopping neighbor...I protect my kids. I love my kids more than the animal."

over defendant's objection,[2] that defendant had assaulted his wife while she was pregnant, that defendant's wife had obtained a restraining order against him in the past, and that defendant once threatened, while the children were present, to kill his wife.

■ In defendant's first assignment of error, he argues that the trial court erred in admitting evidence of defendant's past conduct toward his wife. The prosecutor argued at trial that defendant had offered "evidence of a pertinent trait of character" by testifying that he loved his children more than the dog, and that his love for his children motivated him to kill the dog, a strategy that the prosecutor characterized as "a loving, protective father defense." According to the prosecutor, defendant's testimony opened the door to impeachment evidence showing that he was not the loving father he portrayed himself to be. The trial court agreed, reasoning that defendant had put his character as a "loving, protective father" into issue.[3] The state argues on appeal that the evidence of defendant's conduct toward his wife is admissible under OEC 404(2)(a), which allows rebuttal of a defendant's proffered character evidence through evidence of specific instances of conduct.[4] Thus, the admissibility of the evidence

---

[2] Defendant's counsel said:

"I'd strongly object, of course, I think he has not opened the door. I think that that's extremely prejudicial evidence. I don't think the door has been opened to it. All that evidence recited are disputes between him and his wife. They don't involve his children. His statement now is that he loves his children, he was protecting them, and it had nothing to do with his wife. And I think that this will open a huge door. We'll have a mini trial within the trial. This evidence is extremely prejudicial. And I just—I think that [defendant's] statements have not opened the door to that."

[3] The trial court drew its own nexus between defendant's statement and the state's proffered evidence, stating, "Abuse in front of the children is abuse to the children." Apparently, it reasoned that, because defendant asserted that he loved his children more than the dog, he could be impeached by evidence tending to show that he was not a good father.

[4] OEC 404 provides, in part:

"(1) Evidence of a person's character is admissible when it is an essential element of a charge, claim or defense.

"(2) Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"(a) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]

depends on whether the state is correct about the applicability of OEC 404(2)(a).

The answer to the state's argument is that defendant's testimony was not "character evidence," and therefore, the state's attempted rebuttal through evidence of specific prior conduct was not authorized by OEC 404 or any other provision of the evidence code. Defendant was charged with the violation of ORS 167.322, aggravated animal abuse in the first degree. ORS 167.322 provides, in part:

"(1)   A person commits the crime of aggravated animal abuse in the first degree if the person:

"(a)   *Maliciously* kills an animal[.]

"* * * * *

"(3)   As used in this section, 'maliciously' means intentionally acting with a depravity of mind and reckless and wanton disregard of life." (Emphasis added.)

As evidenced by the language of the statute, aggravated animal abuse is a crime that requires the state to prove that defendant "maliciously" killed Lady, as defined by the statute. Defendant pled "not guilty" to the charges. His plea required the state to prove each material element of the charge beyond a reasonable doubt, including that defendant maliciously killed Lady. *State v. Boots*, 315 Or 572, 590, 848 P2d 76, *cert den* 510 US 1013 (1993) (Unis, J., dissenting) ("Defendant's plea of not guilty cast on the state the burden of proving beyond a reasonable doubt every essential element of the crime[.]" (Footnote omitted.)).

■    Defendant's testimony that he shot Lady because he loves his kids more than he loved Lady is evidence of his mental state at the time of the shooting, and it controverts the state's allegation that he acted maliciously. Defendant's testimony was not character evidence, as that term is used in

---

"* * * * *

"(3) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

OEC 404. As the Supreme Court said in *State v. Marshall*, 312 Or 367, 371-72, 823 P2d 961 (1990):

" 'Character' is not defined in the Oregon Evidence Code or in the legislative commentary to the code. In *State v. Carr*, 302 Or 20, 25, 725 P2d 1287 (1986), this court stated:

" ' "[c]haracter" generally indicates "a person's disposition or propensity towards certain behavior, such as honesty," * * * or "a person's tendency to act in a certain way in all varying situations of life." '

"Professor McCormick has explained that '[c]haracter is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness.' McCormick, Evidence 574, § 195 (3d ed 1984). For example, McCormick explains that when we speak of a character for carefulness, we think of the person's tendency to act prudently in all the varying situations of life—in business, at home, in handling automobiles, and in walking across the street.

"Character evidence, therefore, is evidence of a particular human trait, such as truthfulness, honesty, temperance, carefulness, or peacefulness, *etc*. A person's character with respect to truthfulness means that person's propensity to tell the truth in all the varying situations of life. A person's character with respect to carefulness means that person's propensity to act with care in all the varying situations of life." (Footnotes and some citations omitted.)

The state's classification of defendant's testimony as "character evidence" is flawed, because his testimony was not a description of his disposition in general or of a particularized trait that manifested itself in all the varying situations of life. Rather, the question on cross-examination asked defendant if he had ever made a statement that all dogs should be shot, in order to show that he had maliciously killed Lady. Defendant's answer, understood in the context of the examination, was that he loved dogs, but that if his children were in danger, he placed a higher value on their welfare than on the life of the dog threatening them. That is evidence of defendant's motivation or state of mind at the time of the shooting.[5] It is not "character evidence" for purposes of

---

[5] Arguments made by defendant's counsel also suggest that defendant was offering his testimony for its effect in refuting the state's allegation of maliciousness. Defense counsel said in opening statement:

OEC 404(2). Because defendant's testimony was not character evidence, the state was not entitled to offer specific instances of defendant's conduct to rebut defendant's testimony under OEC 404(2)(a). That is particularly the case in light of OEC 404(3) which prohibits propensity evidence of other crimes or wrongs except in instances not applicable here. We conclude therefore that it was error to admit the state's evidence about defendant's prior conduct toward his wife.

■ The state next argues that the trial court's error was harmless. It reasons that defendant had no other defense available under Oregon law for his actions, so a conviction would necessarily follow from the trial whether or not the prejudicial evidence was admitted. In support of its argument, the state points out that defendant was not entitled to an instruction on defense of self or others on these facts.[6] The state also contends that the defense of "choice of evils," was not available to defendant because Lady presented no *imminent* danger to him or his children at the time he shot her.[7] Even so, defendant was still entitled to require the state to

---

"It's very unfortunate and sad that this dog died, that a family pet was killed. It's a sad case. But [defendant] did not maliciously kill that dog. The evidence will show that he didn't act with depraved mind on that day and with a wanton disregard for life. [Defendant] was protecting his children from a potentially dangerous animal."

[6] ORS 161.209 provides:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

[7] ORS 161.200 provides, in part:

"(1) Unless inconsistent with other provisions of chapter 743, Oregon Laws 1971, defining justifiable use of physical force, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a) That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b) The threatened danger is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

UCrJI 1103 is the jury instruction that relates the statutory defense to the jury.

prove that he acted "maliciously." The evidence that defendant had assaulted his wife is highly inflammatory and prejudicial evidence. For error to be harmless, it must be shown that the evidence could not have had any tendency to affect the verdict. *State v. Titus*, 328 Or 475, 982 P2d 1133 (1999). On this record, we cannot say that there is little likelihood that the evidence of defendant's abusive treatment of his wife affected the verdict.[8]

Defendant also assigns as error the trial court's failure to instruct on a choice of evils defense. Although we agree with the trial court that the record as developed below did not justify the giving of such an instruction because there was no showing of imminence, we do not foreclose the possibility that the record on retrial may include evidence that would support the instruction. We therefore decline to rule on defendant's assignment in light of the remand for retrial. Defendant's remaining argument on appeal is that the "acquittal first" jury instruction given in this case, which was based on ORS 136.460(2), is unconstitutional. After this case was argued, the issue was decided adversely to defendant's position in *State v. Horsley*, 169 Or App 438, 8 P3d 1021 (2000).

Reversed and remanded.

---

[8] In addition, the state does not argue that we should separately evaluate the effect of the evidence on each of defendant's convictions.