Argued and submitted March 5, the decision of the Court of Appeals reversed and the
judgment of the circuit court affirmed December 12, 1991

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## GLENN A. MARSHALL,
*Respondent on Review.*

(CC C8711-36869; CA A48848; SC S37550)

823 P2d 961

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the petition were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Michael C. Livingston, Assistant Attorney General.

Joanne Reisman, Portland, argued the cause and filed the response to the petition for the respondent on review.

Before Peterson,** Chief Justice, and Carson,*** Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

VAN HOOMISSEN, J.

---

** Chief Justice when case was argued.

*** Chief Justice when this decision was rendered.

## VAN HOOMISSEN, J.

Defendant was convicted of robbery and burglary. On appeal, he contended that the trial court erred in refusing to permit his witness to testify on direct examination about the crime victim's alleged practice of giving people her property as collateral for her debts and later claiming that the property had been stolen. The Court of Appeals reversed. *State v. Marshall*, 102 Or App 147, 793 P2d 336 (1990). We reverse the decision of the Court of Appeals.

The crime victim told the police that she had been robbed in her home by defendant and another person. Two hours later, defendant was apprehended; items belonging to the victim were found in the vehicle in which he was riding. At trial, the victim testified. Defendant did not testify. His defense was that the victim had given her property to defendant's alleged accomplice, who was driving the vehicle in which defendant was apprehended, as collateral for a debt she owed the alleged accomplice.

During defendant's case-in-chief in support of that defense, his counsel called a witness to testify about the witness' "opinion as to [the victim's] reputation for truthfulness" and whether there was "any particular kind of lie which [the victim] has a reputation for telling?." According to defendant's offer of proof, in response to the first question, the witness would testify that the victim is "a liar" and, in response to the second question, the witness would testify that the victim had a "reputation" for giving property as collateral for a debt and later claiming it was stolen.[1]

---

[1] Defendant made the following offer of proof, OEC 103(1)(b):

"Q  Are you also acquainted with [the victim]?

"A  I know of her. I have seen her at parties. My brothers have told me about her.

"\* \* \* \* \*

"Q  How long have [you] been aware of her?

"A  For about two years.

"\* \* \* \* \*

"Q  [H]ave you formed an opinion as to [the victim's] reputation for truthfulness or untruthfulness among these people?

"A  Yes, I have.

"Q  What is that opinion?

"A  She's a liar.

The witness was allowed to express her opinion that the victim has a reputation for untruthfulness, *i.e.*, "She's a liar." The state, however, objected to defense counsel's next question, which asked the witness, "Is there any particular kind of lie which [the victim] has a reputation for telling?" on the grounds that the question called for inadmissible hearsay testimony and that, in essence, it called for inadmissible character evidence. Defendant argued that the testimony was admissible character evidence under OEC 404(2)(b),[2] because it tended to suggest that the victim was falsely accusing him of robbing her.

The trial court sustained the state's objection, explaining:

"I'm going to sustain the objection. The secondary area that you tried to get into, [defense counsel], is not admissible, in my opinion, under [OEC] Rule 608[3] or 609[4] or 404[(2)(b)

---

"Q Is there any particular kind of lie which she has a reputation for telling?

"A Uhm, yeah. She says that people rip her off when she gives them things to hold on to for her.

"Q By 'rip her off,' what do you mean?

"A She'll hand them like her credit cards when she owes them money or jewelry or drugs to hold to [*sic*] for her until she can get the money, then she'll turn around and say they stole them from her."

[2] OEC 404(2)(b) provides in part:

"Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"* * * * *

"(b) Evidence of a pertinent trait of character of the victim of the crime offered by an accused * * *."

Generally, evidence of a person's character is not admissible to prove that the person acted in conformity therewith on a particular occasion. Under OEC 404(2)(b), the accused is permitted to introduce evidence of a "pertinent trait of character of the victim" for the purpose of proving that the victim acted in conformity therewith on a particular occasion. *See* n 10, *infra*.

[3] OEC 608(1) provides in part:

"The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:

"(a) The evidence may refer only to character for truthfulness or untruthfulness * * *[.]"

[4] OEC 609(1) provides:

"For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the

(character of victim)] or 405 [(methods of proving character)]. You can elicit this woman's opinion that the victim * * * is a liar. But beyond that, I'm not going to let you narrow it down. And so I'll sustain the objection."

In reversing defendant's conviction on this point, the Court of Appeals reasoned:

"[Defense counsel's] question was framed in terms of reputation. The witness was not asked to relate specific details of acts on which the victim's reputation was based. We hold that the question was proper under OEC 405 and that the trial court abused its discretion in excluding the testimony." *State v. Marshall, supra*, 102 Or App at 151.

We allowed the state's petition for review to determine the correctness of that decision.

■ Generally, the admissibility of evidence in a criminal case is governed by the Oregon Evidence Code. ORS 136.430; OEC 101(1), (2). In this case, the first issue is whether the witness' testimony, about whether there is any particular kind of lie which the victim has a reputation for telling, is character evidence. If it is, the OEC provisions which deal with *when* proof of character is admissible, OEC 404(1) and OEC 404(2), and the OEC provisions which deal with *how* proof of character may be shown, OEC 405(1) and OEC 405(2), apply. If it is not character evidence, then the rules relating to character evidence do not apply. If the witness' testimony is not character evidence, admissibility turns on other provisions of the Oregon Evidence Code.

"Character" is not defined in the Oregon Evidence Code or in the legislative commentary to the code.[5] In *State v. Carr*, 302 Or 20, 25, 725 P2d 1287 (1986), this court stated:

" 'Character' generally indicates 'a person's disposition or propensity towards certain behavior, such as honesty,' * * *

___

witness or established by public record, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law which the witness was convicted, or (b) involved false statement or dishonesty."

[5] Neither is character defined in the Federal Rules of Evidence or in the advisory committee notes to that code. Professors Wright and Graham observe that the definitions of "character" that appear in the prior case law often are erroneous and seldom helpful. 22 Wright & Graham, Federal Practice and Procedure 350, § 5233 (1978 & Supp 1991).

or 'a person's tendency to act in a certain way in all varying situations of life.' "[6]

Professor McCormick has explained that "[c]haracter is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness." McCormick, Evidence 574, § 195 (3d ed 1984). For example, McCormick explains that when we speak of a character for carefulness, we think of the person's tendency to act prudently in all the varying situations of life — in business, at home, in handling automobiles, and in walking across the street. *See Charmley v. Lewis*, 302 Or 324, 327-28, 729 P2d 567 (1986) (distinguishing character from habit and quoting McCormick's definition of character with approval).

■ Character evidence, therefore, is evidence of a particular human trait, such as truthfulness, honesty, temperance, carefulness, or peacefulness, *etc.* A person's character with respect to truthfulness means that person's propensity to tell the truth in all the varying situations of life. A person's character with respect to carefulness means that person's propensity to act with care in all the varying situations of life.

In this case, we conclude that the witness' testimony concerning "any particular kind of lie which [the victim] has a reputation for telling" is evidence relating to a trait of character. It is evidence relating to the victim's disposition or propensity to be untruthful within the scope of OEC 404(2)(b). We proceed to examine, therefore, how such evidence of character may be proved.

---

[6] In other cases, this court has defined "character" in various contexts. *See, e.g., State v. Nefstad*, 309 Or 523, 554, 789 P2d 1326 (1990) (noting the definition of "character" given by Professor McCormick); *Shirley v. Freunscht*, 303 Or 234, 238, 735 P2d 600 (1987) (character is internal; it is that set of personality traits and moral values actually possessed by an individual); *Bay v. State Board of Education*, 233 Or 601, 607-08, 378 P2d 558 (1963) (character is what one is morally, while reputation is what one is reputed to be; a person's "character" is usually thought to embrace all one's qualities and deficiencies regarding traits of personality, behavior, integrity, temperance, consideration, sportsmanship, altruism, *etc.*, which distinguish one as a human being from one's fellow human beings. Disposition toward criminal acts is only one of the qualities which constitute one's character); *In Re Weinstein*, 150 Or 1, 9, 42 P2d 744 (1935) ("Character and reputation are distinct. Reputation is the opinion generally entertained of a man, while character is what he really is").

OEC 405(1) provides that when character evidence is offered for one of the purposes allowed under OEC 404(2), as is the evidence here, proof may be made by reputation or opinion testimony,[7] but not by reference to specific instances of conduct.

In this case, the defense witness was permitted to express her "opinion as to [the victim's] reputation for truthfulness."[8] Defense counsel then asked, "Is there a particular kind of lie the victim has a reputation for telling?" The prosecutor objected that the question called for hearsay testimony and that, in essence, it called for inadmissible character evidence.

The trial court's ruling sustaining the prosecutor's objection was correct. Defense counsel's question, "Is there any particular kind of lie which [the victim] has a reputation for telling?," was the functional equivalent of asking the witness to relate specific instances of conduct as proof of the character trait of the victim for untruthfulness. Notwithstanding defense counsel's effort to couch the question in terms of "reputation," the question, unlike the question that immediately preceded it, was not focused on a generalized description of the victim's character trait for veracity. Rather, by focusing on a "particular kind of lie," the substance of the question was directed at a specific instance or series of specific instances in which the victim acted in a particular manner.

Evidence of specific instances of conduct, as noted, is not a permissible method of proving character as circumstantial evidence of conduct on direct examination. *See* OEC 405(1) (implicit in rule).[9] Consequently, in this case, defense counsel's question was appropriately excluded on the state's objection that it called for inadmissible character evidence.

■ The prosecutor's objection that defense counsel's question called for inadmissible hearsay was also correct. The

---

[7] The admissibility of opinion testimony is governed by OEC 701 to 705.

[8] We consider this to be admissible character evidence.

[9] The Legislative Commentary to OEC 405 states:

"Under Rule 405, evidence of specific instances of conduct is not permissible on direct examination of an ordinary opinion witness to prove character."

question called for hearsay because the record established that the witness' knowledge of those instances of conduct was premised only on third parties' out-of-court statements as to those instances, and those statements were being relied upon for the truth of their common assertion. OEC 801(3). Defendant argues, nonetheless, that the testimony is admissible hearsay under the exception in OEC 803(21) which allows "reputation of a person's character among associates of the person or in the community." As noted, however, the question at issue, in substance, asked for the *basis* of the victim's reputation in the community, *i.e.*, specific instances of conduct. In other words, the testimony called for by the question was not admissible under OEC 803(21) which permits reputation evidence of a person's character, *i.e.*, reputation evidence of a person's generalized description in respect to a character trait.

■　　In sum, the trial court did not err, with respect to the ground for admissibility argued to it, in refusing to permit defendant's witness to testify on direct examination as to "any particular kind of lie which [the victim] has a reputation for telling."[10] In ruling to the contrary, the Court of Appeals erred.

---

[10] Defendant argued for the first time on appeal that the witness' testimony also was admissible under: (1) OEC 404(3) (evidence of other crimes, wrongs or acts) to show the victim's plan to accuse him of robbery in retaliation for his attempt to collect money from her and to negate her charge that she was robbed; (2) under OEC 608 (credibility of a witness) to impeach the victim's testimony; and (3) under OEC 406 (habit, routine practice) as evidence of the victim's "habit" of falsely accusing others. We do not reach those arguments, however, because defendant did not offer the witness' testimony under OEC 404(3), OEC 608, or OEC 406, and he did not make those arguments at trial. The Court of Appeals properly did not address those unspoken arguments and we will not consider them. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991); *State v. Hickman*, 273 Or 358, 360, 540 P2d 1406 (1975).

Defendant also argued for the first time on appeal that the witness' testimony was admissible because defendant has a basic constitutional right to present his theory of the defense to the jury in order to have a fair trial. He relied on Article I, section 11, of the Oregon Constitution and on the Sixth and Fourteenth Amendments to the Constitution of the United States. The Court of Appeals did not discuss this issue in its opinion.

In the circumstances presented by the record in this case, where defendant failed to raise *any* constitutional issue or make *any* constitutional argument in the trial court and where the Court of Appeals did not discuss the constitutional issue and argument raised by defendant for the first time on appeal, we decline to consider defendant's constitutional argument. *State v. King*, 307 Or 332, 337-38, 768 P2d 391 (1989); *State v. Hitz*, 307 Or 183, 188-89, 766 P2d 373 (1988).

We have considered defendant's other assignments of error and arguments and, as did the Court of Appeals, *State v. Marshall*, *supra*, 102 Or App at 149 n 1, we conclude that they are unpersuasive.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.