Argued and submitted July 10, 1991, the decision of Court of Appeals reversed in part; otherwise affirmed, case remanded to the Court of Appeals April 2, 1992

See 117 Or App 1 (1992)

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## DONALD GONZALES ODOMS,
*Respondent on Review.*

(CC C88-10-36961; CA A60041; SC S37919)

829 P2d 690

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General and Virginia L. Linder, Solicitor General, Salem.

Howard Clyman, West Linn, argued the cause and filed the response for respondent on review.

VAN HOOMISSEN, J.

Unis, J., specially concurred and filed an opinion in which Fadeley, J., joined.

## VAN HOOMISSEN, J.

Defendant was convicted by a jury of kidnapping in the first degree, rape in the first degree, sodomy in the first degree, compelling prostitution, promoting prostitution, robbery in the third degree, operating a motor vehicle in violation of a habitual offender order, and felony driving while revoked. On appeal, he contended that the trial court erred in allowing, over his objection, testimony by a police officer regarding the complaining witness' credibility. The Court of Appeals reversed in part and remanded for a new trial.[1] *State v. Odoms*, 104 Or App 658, 803 P2d 739 (1990). Because we conclude that the trial court correctly ruled that the evidence should not be excluded for the reason stated by defense counsel at trial, we reverse the decision of the Court of Appeals in part and remand the case to the Court of Appeals to consider defendant's remaining assignments of error.

The charges against defendant arose from events that occurred over a period of three or four days in September 1988. Early in the morning of September 24 or 25, Kidwell, the complaining witness, was kicked out of the house where she had been staying. She went to a restaurant, where she was accosted in her car by a pimp. Defendant and another man "rescued" her, and defendant took her to where he was staying. Over the next two or three days, Kidwell allegedly had sexual intercourse with defendant, engaged in sodomy with him, worked as a prostitute for him, and signed a paper that defendant used to sell her car, keeping the money for himself. Defendant was arrested after Kidwell told the police that he had raped, sodomized, kidnapped, and robbed her, and forced her into prostitution. The robbery charge was based on Kidwell's complaint that defendant had forced her to sell her car and that he had kept the money.

Detectives Morse and Jensen questioned defendant after he was arrested. At first, defendant denied even knowing Kidwell. The detectives then stopped questioning him for about 20 minutes. When they resumed, defendant said that he was beginning to remember something about the sale of

---

[1] In the Court of Appeals, defendant did not challenge his convictions on the motor vehicle code violations, and they were affirmed. *State v. Odoms*, 104 Or App 658, 662 n 1, 803 P2d 739 (1990). We do not consider those convictions on review.

Kidwell's car and that someone named Leroy Morales had been involved with her. Defendant continued to deny knowing Kidwell. When the detectives told defendant that Kidwell had accused him of raping, sodomizing, and kidnapping her, and of forcing her to sell her car, defendant responded, "No way; don't even know her." He added, "Leroy had all the dealing with her." When the detectives asked defendant whether he had had sexual relations with Kidwell, he denied it. After another break, defendant admitted that he knew Kidwell, but he insisted that she had consented to all their activities together and that her criminal charges against him were untrue.

At trial, during the state's case-in-chief, Detective Morse testified on direct examination, with respect to the progression of the detective's three interviews with defendant, as follows:

"Q. [BY PROSECUTOR:] [Defendant] said he didn't know * * * Kidwell?

"A. [BY DETECTIVE MORSE:] Yes, [defendant] directly said that.

"Q. Did he continue throughout your interview to deny knowing * * * Kidwell?

"A. No. Eventually he admitted knowing her.

"Q. How did that come about?

"A. During the process of this interview, I believe Detective Jensen [who did not testify at trial] and I took another break and returned [defendant] back to the holding cell for a few minutes and then returned him to the interview room and continued our line of questioning with him.

"[Defendant] said that he had been trying to straighten his life out, and he was really trying to do things right any more. And I told him that I didn't believe that was correct, that I thought he was probably lying to me and — due to the type of people that I believed that he had been associating with recently. And he again demanded that he be confronted by * * * Kidwell to face these allegations directly. And I — again, I stressed the importance to [defendant] to tell the truth and I said I really need help if you know who this girl is and you know anything about the sale of the car, help us out. Who's * * * Kidwell and what do you have, what was going on between you, things of this nature I was saying to him. And

he responded finally by saying, and I quote, 'I'm kind of seeing her in my vision now,' unquote.

"We told [defendant] that we would try to go out and show some of his friends pictures of himself and * * * Kidwell and see if they remember — ever remember seeing them together, and he responded to that by saying, 'I've got no friends.'

"Q.   Did you try to press further about this vision of * * * Kidwell that the Defendant now had?

"A.   *Yes. Detective Jensen and I continued to question him and told him that we believed that there was something more to all of these allegations than we could put our finger on at that time with his statements to us. And we believed that there was some — perhaps something involved between the two of them that may have caused this allegation by * * * Kidwell to be made.*

"*Detective Jensen told [defendant] if he thoroughly believed that a person just doesn't make allegations —*

"[DEFENSE COUNSEL:] Your Honor, I'm going to object to this not only on the grounds of hearsay, but it's improper opinion evidence.

"THE COURT:  Objection overruled.

"[BY DETECTIVE MORSE:] *That he did not believe someone just inadvertently picks on someone and makes allegations about them if there isn't something to it.*

"[DEFENSE COUNSEL:]  Again, I'd object to that, Your Honor.

"THE COURT:  Overruled.

"Q.   [PROSECUTOR:]  These were statements made to the Defendant?

"A.   [DETECTIVE MORSE:]  Yes. We stressed the fact to [defendant] that we needed to hear his side of what happened if, in fact, something did happen, to try to straighten it out. He was asked if there was any possibility that this scenario could have evolved from a boyfriend/ girlfriend situation that got out of hand. And I — he was asked to think about that for a moment. It was at this time that Detective Jensen and I stepped out of the room for the second time." (Emphasis added.)

At trial, Kidwell testified for the state. Defendant did not testify. In his argument to the jury, defendant's counsel

acknowledged that defendant had been untruthful during questioning by the detectives when he initially denied knowing Kidwell,[2] but he argued that none of the criminal conduct of which Kidwell had accused defendant had, in fact, occurred. The jury apparently believed otherwise and convicted defendant.

On appeal, defendant argued that the above-emphasized portion of Detective Morse's testimony was an impermissible comment on Kidwell's credibility.[3] The state argued that the issue presented here falls outside this court's holding in *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983). The Court of Appeals agreed with defendant, stating:

> "Although the officer's comment was ostensibly about how persons 'typically' act, in the context of his entire testimony the challenged statement was not a comment on human behavior in general. It was, rather, a comment on *Kidwell's* credibility. The officer's testimony was that the police told defendant that they had information that 'he had not only forced her to sell the car, but he had raped her and kidnapped her and sodomized her.' The officer had repeatedly mentioned Kidwell by name immediately before that testimony. * * * [T]he comment allowed the jury to infer that the officer believed the complaining witness' story. It was error to admit the testimony." *State v. Odoms, supra*, 104 Or App at 661 (emphasis in original).[4]

The court also held that, because credibility was the principal issue at trial, the error was not harmless and a new trial was required. *Id.* at 662. We allowed the state's petition for review.

---

[2] For example, during argument, defense counsel told the jury:

"That [Kidwell] was in [defendant's] car. We don't deny that. *Grant you, [defendant] wasn't candid with the police about being with her. We don't dispute that for a minute.* But we never denied that he was with her. We called a witness today who actually said * * * she got in the car with [him]. So * * * there's the corroboration that she was in the car." (Emphasis added.)

[3] Defendant did not pursue his hearsay objection on appeal. We, therefore, do not consider it on review.

[4] Judge Rossman dissented, concluding:

"[Detective Morse] simply explained why he interviewed defendant *several* different times during the investigation, in the face of defendant's repeated insistence that he had never met a person named Kidwell." *State v. Odoms, supra*, 104 Or App at 663 (emphasis in original).

In *State v. Middleton, supra,* 294 Or at 438, this court held that "a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness." *See State v. Isom,* 306 Or 587, 591-92, 761 P2d 524 (1988) (same); *State v. Milbradt,* 305 Or 621, 629, 756 P2d 620 (1988) (same); *State v. Brown,* 297 Or 404, 443, 687 P2d 751 (1984) (same); *see also Powers v. Officer Cheeley,* 307 Or 585, 596 n 11, 771 P2d 622 (1989) (setting out this court's cases developing the rule).

In this case, defendant argues that the detectives' out-of-court statements to defendant, as recounted by Detective Morse at trial, were inadmissible "testimony from a witness about the credibility of another witness [Kidwell]." *State v. Middleton, supra,* 294 Or at 438. Because the point of *Middleton* was only to preclude testimony by *one trial witness* about whether *another trial witness* is telling the truth, we disagree.

■ Opinion evidence of the type prohibited in *Middleton* and its progeny goes beyond the type of impeaching evidence that is permissible at trial under OEC 608.[5] Under OEC 608(1), the credibility of a witness may be impeached or bolstered in the form of opinion or reputation testimony showing that the witness' character with respect to truthfulness is good or bad.[6] OEC 608 does not permit opinion

---

[5] OEC 608 provides:

"(1) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but:

"(a) The evidence may refer only to character for truthfulness or untruthfulness; and

"(b) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

"(2) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, other than conviction of a crime as provided in [OEC 609], may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness."

[6]

"A person's character with respect to truthfulness means that person's propensity to tell the truth in all the varying situations of life." *State v. Marshall,* 312 Or 367, 372, 823 P2d 961 (1991).

evidence as to specific instances of conduct to impeach or bolster the credibility of a witness. OEC 608(2); OEC 404(2)(c); OEC 405(1); *State v. Marshall*, 312 Or 367, 373, 823 P2d 961 (1991).

■■■■ On the other hand, a relevant out-of-court state-ment, recounted at trial, generally may not be excluded merely because it is phrased in the form of an opinion.[7] Professor McCormick has explained that the reasons for preventing testimony in the form of an opinion at trial do not apply to out-of-court statements:

> "[T]he purpose of the [opinion] rule is to regulate the in-court interrogation of a witness so as to elicit answers in a more concrete form rather than in terms of inference. In its modern form, it is a rule of preference for the more concrete answers, if the witness can give them, rather than a rule of exclusion.
>
> "This rule, which is designed to promote the concreteness of answers on the stand, is grotesquely misapplied to out-of-court statements * * * where the declarant's statements are made without thought of the form of courtroom testimony. While counsel may reframe the question in the preferred form if an objection is sustained regarding in-court tes-timony, the rule can only be applied by excluding an out-of-court statement." McCormick, Evidence 146, § 256 (4th ed 1992 (footnote omitted).

*See Washington v. Taseca Homes, Inc.*, 310 Or 783, 786, 802 P2d 70 (1990) (relevant out-of-court statement of a party generally is admissible even though phrased in the form of an opinion);[8] McCormick, *supra*, 75, § 18 (the opinion rule has

---

[7] In *State v. Middleton*, 294 Or 427, 435, 657 P2d 1215 (1983), this court acknowledged that much expert testimony will tend to show that another witness either is or is not telling the truth, but that tendency, by itself, will not render the evidence inadmissible. The same observation may be made about lay testimony. *See id.* at 439 (Roberts, J., concurring) ("There is no question that the ultimate purpose of such evidence, like most testimony generally, is to bolster the credibility of the witness in whose favor it is used.").

[8] The rule was the same in pre-Oregon Evidence Code cases. *See, e.g., Williams v. Laurence-David, Inc.*, 271 Or 712, 720, 534 P2d 173 (1975) (testimony that qualifies under other exceptions to the hearsay rule is admissible despite fact that it includes opinion); *Swain v. Oregon Motor Stages*, 160 Or 1, 6, 82 P2d 1084 (1938) (out-of-court admission by plaintiff, a bus passenger suing for injuries incurred in collision with automobile, that the driver of the automobile was to blame for the accident held admissible although in the form of an opinion); *see also Wright v. Swann*, 261 Or 440, 447, 493 P2d 148 (1972) (the rule excluding opinion evidence

no sensible application to statements made out-of-court). Accordingly, we hold that the trial court did not err in overruling defendant's "improper opinion evidence" objection. The decision of the Court of Appeals to the contrary was erroneous.

We are not called on in this case to determine whether evidence of the sort involved here is subject to a relevance objection under OEC 401,[9] or to OEC 403 balancing.[10] Defendant did not ask the trial court to exclude any portion of Morse's testimony under OEC 401 or OEC 403. His only objection was that the above-emphasized portion of Morse's testimony was "improper opinion evidence" because it was an impermissible comment on Kidwell's credibility.

In reversing the trial court on the evidence question, the Court of Appeals did not reach defendant's other assignments of error (save one, which is not at issue on review). *State v. Odoms, supra,* 104 Or App at 662 n 2. Accordingly, we remand this case to the Court of Appeals to consider the remaining assignments.

The decision of the Court of Appeals is reversed with respect to the judgments of conviction for kidnapping in the first degree, rape in the first degree, sodomy in the first degree, compelling prostitution, promoting prostitution, and robbery in the third degree; otherwise the decision of the Court of Appeals is affirmed. This case is remanded to the Court of Appeals to consider the remaining assignments of error.

---

should have no application when the opinion is part of a "spontaneous statement" or "excited utterance," particularly when coupled with a statement of facts that explain, characterize, or "throw light" on the "exciting occurrence").

[9] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[10] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

**UNIS, J.,** specially concurring.

The sole issue presented to this court in this case is whether the challenged portion of Detective Morse's trial testimony relating his out-of-court statement to defendant about Kidwell's credibility is improper opinion evidence. The challenged portion of Detective Morse's testimony is susceptible to an opinion objection only if it is offered as opinion testimony, *i.e.*, for the truth of the judgment or belief it expresses.

The challenged testimony of Detective Morse was not offered for its truth. It was offered to show its effect on the hearer's (defendant's) state of mind, *i.e.*, how and why defendant changed the story he gave to Detective Morse in the post-arrest, pretrial interviews concerning whether he (defendant) knew Kidwell. Given the purpose for which the challenged portion of Detective Morse's testimony was offered, it is not susceptible to an opinion objection.[1] The trial court did not err, therefore, in overruling defendant's improper opinion evidence objection.[2]

Fadeley, J., joins in this specially concurring opinion.

---

[1] Defendant does not argue on appeal, as he did before the trial court, that Detective Morse's testimony is hearsay. For the same reason that Detective Morse's out-of-court statement offered in court is not hearsay (*i.e.*, because it was not offered for its truth), it is not offered as opinion and is not susceptible to an opinion objection. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 801(3). *See State v. Mayfield*, 302 Or 631, 641, 733 P2d 438 (1987) (testimony in court of out-of-court statements offered to prove that the words motivated a person to do something is technically not hearsay); *Sheedy v. Stall*, 255 Or 594, 596-99, 468 P2d 529 (1970) (pre-OEC case; evidence offered to show that statement was made but not offered to prove the truth of the content of statement is not hearsay).

[2] We are not called on in this case to decide whether the challenged portion of Detective Morse's testimony should be excluded under the relevancy balancing test set forth in OEC 403.