Submitted April 29, 2011, affirmed January 25, petition for review denied July 19, 2012 (352 Or 265)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## WILLIAM LEROY BROOKS,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR070062; A140867

270 P3d 388

Laura A. Frikert, Deputy Public Defender, and Peter Gartlan, Chief Defender, Office of Public Defense Services, filed the brief for appellant.

Matthew J. Lysne, Assistant Attorney General, John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Edmonds, Senior Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for eight counts of first-degree sexual abuse, ORS 163.427, and two counts of attempted first-degree rape, ORS 161.405; ORS 163.375, raising three assignments of error—one of which we reject without discussion. In his two remaining assignments, defendant argues that the trial court erred in (1) permitting a witness to testify about statements that defendant and another nonwitness had made before trial about the victim's credibility and (2) admitting, in the absence of physical evidence of abuse, a physician's expert diagnosis that the victim had been sexually abused—a violation of the principle established in *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), against admitting such testimony. We reject defendant's argument on the admissibility of the testimony about the victim's credibility, and, although we agree with defendant on his other argument, *viz.*, that the court erred in admitting the physician's diagnosis of sexual abuse, we conclude that that error was harmless. We accordingly affirm defendant's convictions.

We begin with defendant's argument that the court erred in admitting the testimony about the victim's credibility. On two separate occasions, defendant maneuvered the nine-year-old victim into his bedroom, forced her to disrobe, and then inappropriately touched and kissed various areas of her body. Shortly thereafter, the victim recounted those events to her mother, who subsequently told the police about them. Steele, a detective with the Yamhill County Sherriff's Office, interviewed the victim at her school and, based on her disclosures then and during a later assessment, obtained a warrant to search defendant's bedroom.

While Steele and other officers, including his partner, Rosario, were executing the search warrant, defendant approached the residence, stopping in the yard outside of the house to talk with Steele. After Steele identified himself to defendant and told him that the officers at the residence were executing a search warrant, Steele administered *Miranda* warnings, which defendant said that he understood. While Steele then proceeded to interview defendant, Rosario, who had been searching defendant's bedroom, joined Steele and

began to assist him in questioning defendant. Specifically, Rosario asked defendant, "if [the victim] would have come to [defendant] and reported abuse[,] would he believe her, and he told [the officers] that he would believe her." After the officers had asked a couple of follow-up questions, defendant invoked his right to have an attorney present before he would answer more of their questions. The state charged defendant with multiple counts of first-degree sexual abuse, attempted first-degree sexual abuse, and attempted first-degree rape.

Before trial, defendant filed a motion *in limine* to exclude any testimony about Rosario's question and defendant's affirmative answer to it, arguing that the testimony would be an impermissible comment on the credibility of a trial witness, *viz.*, the victim.[1] In response, the state contended that the testimony was admissible because the evidence did not involve

"a witness or an expert coming in at trial and sitting on the witness stand and giving [his or her] opinion as to the truthfulness of the victim.

"Instead, what we have got is an officer framing a question to a defendant during a police interview. And that is an entirely different factor. It is not the officer sitting on the witness stand and saying, 'I interviewed the child, I believed her; I interviewed the defendant, I did not believe him.' That is not what we have * * * here."

The court denied defendant's motion, reasoning that the testimony did not pertain to the credibility of the victim but rather to whether she had any motive to lie. The court further explained that it

"just characterized [the testimony] differently. I do not see that [defendant] is commenting on the truth or veracity of the victim's testimony here in trial. * * * [W]hen he is confronted with that question he is saying * * * he would believe [the victim]. He does not know any reason why she would lie about that."

Steele testified during the ensuing bench trial and related the question asked by Rosario and defendant's

---

[1] Importantly, defendant presented evidence at trial calling the victim's credibility into question and reducing this case, in essence, to a "swearing match."

response, and, following the trial, defendant was convicted on a number of the charged counts. On appeal, the parties essentially reprise the arguments that they made to the trial court, and, for the reasons that follow, the state continues to have the better of the argument.

As the Oregon Supreme Court has repeatedly admonished, "in Oregon a witness, expert or otherwise, may not give an opinion on whether he [or she] believes a witness is telling the truth. We reject testimony from a witness about the credibility of another witness." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983); *see also State v. Milbradt*, 305 Or 621, 630, 756 P2d 620 (1988) ("An opinion that a person is not deceptive, could not lie without being tripped up, and would not betray a friend (to wit: the defendant) is tantamount to" an inadmissible opinion about credibility). That principle is not limited solely to testimony about whether another witness's trial testimony is credible, but, rather, the restriction also extends to contexts in which a witness testifies about the credibility of another witness by relaying statements that the other witness had previously made outside of court or for a reason unrelated to the case. *State v. Keller*, 315 Or 273, 284-85, 844 P2d 195 (1993). But the issue presented here—*viz.*, whether testimony by a witness at trial restating the opinion of nonwitnesses about the credibility of another witness at trial is admissible—does not fit squarely into the typical scenario addressed in *Middleton*, *Milbradt*, and *Keller*.

Rather, the Oregon Supreme Court addressed a factual scenario similar to the one presented in this case in *State v. Odoms*, 313 Or 76, 829 P2d 690 (1992). In *Odoms*, two detectives interviewed the defendant several times after he had been arrested on a host of criminal charges. At trial, one of the interviewing detectives, Morse, testified on direct examination about the content of the interviews with the defendant, including, most importantly, about a statement that the other interviewing detective, Jensen—*who did not testify at trial*—had made to the defendant with respect to the victim—*who did testify at trial*—*viz.*, that "he [Jensen] did not believe someone just inadvertently picks on someone and makes allegations about them if there isn't something to it." *Id.* at 80 (emphasis omitted). The defendant—*who did not*

*testify at trial*—contended that Morse's testimony was an impermissible comment on the victim's credibility, relying on the restriction in *Middleton*.

The Supreme Court disagreed, concluding that "the point of *Middleton* was only to preclude testimony by *one trial witness* about whether *another trial witness* is telling the truth." *Odoms*, 313 Or at 82 (emphasis in original). Therefore, the principle established in *Middleton* does not make inadmissible a witness's testimony about out-of-court statements about the credibility of a victim that were made to the witness *by a nonwitness. See Keller*, 315 Or at 285 (coming to a similar conclusion about the import of *Odoms*).[2]

Similarly here, Steele recounted at trial the out-of-court statements by Rosario[3] and defendant—*neither of whom testified at trial*—about the credibility of the victim.

---

[2] The Supreme Court's analysis in *State v. Lupoli*, 348 Or 346, 234 P3d 117 (2010), does not cut against or otherwise undermine that principle. In *Lupoli*, the defendant objected—as inadmissible vouching for the credibility of a witness—to testimony at trial by a social worker, Moussa, about her observations during an evaluation of a victim, W, that led to Moussa's conclusion that W had been sexually abused. Specifically, Moussa testified that, during the evaluation, W had presented as developmentally appropriate for her age and W's affect had changed when Moussa asked W questions regarding the incident during which the alleged sexual abuse had occurred. *Because W did not testify at trial due to her age*, the state argued on appeal that *Odoms*'s admonition that *Middleton* was only intended to preclude testimony by one witness at trial about the credibility of *another witness at trial* defeated the defendant's argument that Moussa had improperly commented on W's credibility. *Id.* at 363-64. The Supreme Court disagreed with the state's argument, concluding that the analysis in *Odoms* was inapposite because it did not "suggest[ ], much less compel[ ], the conclusion that a trial witness should be permitted to give an opinion that a nonwitness complainant was telling the truth." *Id.* at 364-65. Further, the court observed that, "[i]n fact, in *Odoms*, the purportedly vouching witness *did not testify*, but the complainant [for whom the nonwitness was vouching] did." *Id.* at 364 n 9 (emphasis added).

That observation highlights the distinction between *Odoms* and *Lupoli*. *Lupoli* stands for the principle that a *witness at trial* may not comment on the credibility of another person regarding statements made by the other person, even if the other person is *not a witness at trial*. On the other hand, *Odoms* stands for the principle that, when the comment about the credibility of another is made to a witness at trial *by a nonwitness*, and the witness merely relays that comment without independently commenting on the other person's credibility, then that testimony is not inadmissible under *Middleton*. The proper focus of the distinction between the two principles is the source of the comment about the credibility of a witness. In other words, *Middleton* and its progeny only preclude comments about the credibility of a witness, whether that witness testifies or not, by *another witness at trial*.

[3] At trial, defendant did not object on hearsay or other grounds to Steele's testimony about the question that Rosario had posed to defendant.

Therefore, under the reasoning of *Odoms*, Steele's testimony is not an inadmissible comment by one trial witness about the credibility of another trial witness, as proscribed under *Middleton* and its progeny, and accordingly, the court did not err in denying defendant's motion to exclude the testimony.

We turn to defendant's argument that the court erred in admitting a physician's expert diagnosis that the victim had been sexually abused, the resolution of which, as we will explain, requires a determination of whether the court's error in admitting the diagnosis was harmless. Accordingly, "we review all pertinent portions of the record, not just those portions most favorable to the state," in resolving that issue. *State v. Sierra-Depina*, 230 Or App 86, 88, 213 P3d 863 (2009) (internal quotation marks omitted). Haddeland, a medical examiner at Juliette's House Child Abuse Assessment Center, conducted an assessment of the victim to determine whether she had been physically or sexually abused by defendant. Despite a lack of physical findings indicating that the victim had been abused, Haddeland diagnosed child sexual abuse based on the victim's history and the disclosures that she had made at Juliette's House about the incidents in which defendant had inappropriately touched her.

At trial, defendant objected to the admission of that diagnosis, contending that, without physical evidence of abuse, Haddeland's expert diagnosis was inadmissible under the requirements established in *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), for the admission of scientific evidence. The trial court admitted Haddeland's testimony over defendant's objection. On appeal, the state concedes that the court erred in admitting the diagnosis because it was not based on any physical evidence of sexual abuse, and we agree. *See, e.g., Southard*, 347 Or at 142 (holding that diagnosis of sexual abuse absent any physical evidence of that abuse is inadmissible under OEC 403).

However, the state argues that, regardless of the court's error, the admission of the diagnosis of sexual abuse was harmless. In support of that argument, the state points to the statement made by the court that, although the diagnosis of sexual abuse had been admitted,

"quite frankly, I do not think the doctors or anybody else who renders an opinion in this case, or a diagnosis [in] the case, is relying upon anything any different than the Court is. It does not require expertise. It requires an analysis of the facts. So, even though that opinion was allowed, I do not rely on it—I would say *I do not rely on it at all in this case*."

(Emphasis added.)

We are persuaded by the state's argument. Because the trial court expressly disclaimed any reliance on the diagnosis in reaching its verdict, and nothing in the record demonstrates otherwise, the erroneously admitted diagnosis evidence did not affect the court's decision, and, therefore, the court's error in admitting it was harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (stating principle that error is harmless if there is little likelihood that it affected the verdict); *State v. Childs*, 243 Or App 129, 131-32, 259 P3d 77, *rev den*, 350 Or 573 (2011) (declining to exercise discretion to correct plainly erroneous admission under *Southard* of sexual abuse diagnosis testimony in light of trial court's indication that "it did not particularly rely on the sexual abuse diagnosis in reaching its decision").

Affirmed.