Argued and submitted February 25, 2015, affirmed November 9, 2016, petition for review denied March 23, 2017 (361 Or 240)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RAND MAURICE CODON,
*Defendant-Appellant.*

Jefferson County Circuit Court
08FE0210; A153009

386 P3d 45

Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## GARRETT, J.

Defendant was convicted of two counts of first-degree rape, ORS 163.375. On appeal, defendant raises two issues.[1] First, he argues that the trial court erred by admitting into evidence parts of his recorded interrogation in which the interrogating detective expressed doubts that defendant was telling the truth. According to defendant, admission of those statements violated the prohibition on "vouching" evidence. Second, defendant challenges the denial of his motion to suppress statements that he made to a Department of Human Services (DHS) caseworker based on her failure to re-*Mirandize* defendant before questioning him. We conclude that the trial court did not err in either respect, and, accordingly, we affirm.

The relevant facts are largely procedural and undisputed. The victim, defendant's stepdaughter, sent a message to a friend stating that defendant had raped her. The friend's mother saw the message and reported it to the Oregon State Police. Detective Cuevas contacted Spitz, a DHS caseworker; Spitz interviewed the victim, who confirmed that defendant had raped her both in Oregon and in California. Cuevas and Spitz also spoke with the victim's mother, who agreed to call defendant and confront him regarding the victim's statements. During that telephone call, defendant told the mother that he could not remember whether he had had sexual relations with the victim.

Later, at Cuevas's request, defendant agreed to submit to a recorded interview at the sheriff's office. Defendant was read his *Miranda* rights at approximately 5:00 p.m. and advised that he was free to leave at any time. When confronted with the allegations against him, defendant initially denied having sexual intercourse with the victim. Cuevas explained to defendant that his denials were not believable

---

[1] This case is before us for the second time. In *State v. Codon*, 247 Or App 756, 270 P3d 409 (2012) (*Codon I*), we reversed and remanded for a new trial based on the trial court's plain error in admitting into evidence a medical expert's diagnosis that the victim "had been sexually abused" in the absence of physical findings of abuse. *See State v. Southard*, 347 Or 127, 218 P3d 104 (2009) (absent any physical evidence of abuse, a medical diagnosis of "sexual abuse" is inadmissible under OEC 403).

generally or not believable by a jury.[2] Defendant first replied that it was possible that he had had sexual intercourse with the victim and eventually admitted that he had sexual intercourse with the victim once in Oregon and on four occasions in California. In response, Cuevas thanked defendant for telling him the "truth" and for "being honest with [him]." Defendant was placed under arrest at the conclusion of that interview. Later that evening, Cuevas telephoned Spitz at home to tell her that defendant had been arrested after having confessed.

At approximately 9:00 a.m. the following morning, Spitz made contact with defendant at the jail pursuant to a DHS policy that required her to perform a Child Protective Services assessment. Spitz introduced herself as a child-welfare worker and explained that she was "doing an investigation." Spitz also informed defendant that, in light of the

---

[2] On appeal, defendant highlights the following seven statements made by Cuevas during the course of defendant's interrogation:

(1) "So I guess, I guess the most concerning thing to me (inaudible) the red flag (inaudible), is this. I've met some hard-core alcoholics, okay. But if you did what you're being accused of, that's not one of those things that you just kind of forget."

(2) "And there's certain ways for people to respond when they are accused of something. You know, if I got a phone call like that, I'd be, I'd be screaming *** I would be adamant. I would not be apologizing for it. *** If I'm an alcoholic, I'll say 'you know what, yeah, I fricking drink too much but I don't rape girls, period.'"

(3) "You're about 70 percent with me with everything, okay. But here's the story on this whole thing, man. Listen to me closely, okay? You got to come all the way and here's why. Because if you tell me what happened, you know what happens? I put the truth in the report. That's what I put down. I don't put some bullshit story down that 'I don't remember, it possibly could have happened.' You tell that to 12 jury people on a case like this. What are they go[ing] to believe? They're going to say 'that guy's full of crap,' you know[.]"

(4) "Let's not end it there, let's go all the way with it and tell me what happened. Because I can tell you, you tell us, you tell a jury that says, 'you know, yeah, it possibly could have happened and I don't remember,' they're going to tear you up. They're not going to believe you."

(5) "But I'm saying with what I've got, with the facts that I have presented to me and what you're telling me makes you look like a liar unless you come all the way with me."

(6) "But what is good about this, [defendant], is that you told me the truth. And that's, that's the way it's going to be presented in the report, okay?"

(7) "You are a rare man, okay. I never get, I never get this much honesty from somebody, you know. I want to tell you, you know, before, before we take the next step here *** I do appreciate you being honest with me."

pending criminal case against him, he did not have to speak with her. Defendant replied that he had already shared everything with the police. Spitz then asked, "why [the victim]," to which defendant replied that the victim had "come on to him" when he was drinking. In response to Spitz's follow-up question, "how many times," defendant told her that he had sexual intercourse with the victim four times in California and once in Oregon.

Before trial, defendant moved to exclude numerous statements made by Cuevas during the recorded interrogation, arguing, among other things, that they amounted to impermissible "vouching." Specifically, defendant objected to Cuevas's statements that: (1) "kids don't make up this kind of stuff," and, if they do, their stories typically unravel rather quickly, and (2) defendant was being only about "70 percent" honest and needed "to come all the way with [Cuevas] and tell [Cuevas] what happened." As for the latter statement, defendant cited other, similar comments by Cuevas during the interrogation in which Cuevas "repeatedly told defendant that he needed to tell the truth," asked defendant "to be honest with him," and said that, "if [defendant] told [Cuevas] the truth, [Cuevas] would put that in his report, [and] not that story defendant had told him previously." The state responded that Cuevas's statements were relevant context to explain defendant's responses to the accusations, and to describe the progression of the interrogation. The trial court granted defendant's motion as to the first statement but not the second group of statements:

> "[The second statement] is a closer case. The detective tells the defendant that he needs to be honest with him. ＊＊＊
>
> "The, when the officer says he thinks the defendant's being 70 percent honest and to come clean with the rest of it, I, I don't think that's tantamount to calling the defendant a liar. *It's, number one, it's part of his conversation that the officer's having with him, and the officer's saying 'I think there's more.'*
>
> "He's not accusing the defendant of being a liar. He's accusing the defendant of not telling him everything. And that's a distinction with a difference. ＊＊＊ [T]he officer is not saying the 70 percent you told him was a lie. The officer

is saying 'I think you told me about 70 percent of the stuff,' and 'tell me what, the rest of what happened.'

"And the, the officer said 'if you want to stick with the story that you're giving me, that's fine.' And then he said *** what the officer would do with the statements. The officer did as defense points out in his brief repeatedly—by that I mean more than once because I didn't count it, but it was more than once—told defendant that he should be honest with him, he should tell the truth.

"But I, I don't believe that the officer ever questioned *** the defendant's credibility or integrity to the point that it would get us into trouble with *Milbradt* or the other cases, *Lupoli* and some of the other, or even *McQuiston* and some of the others.

"So I think, although that's a close case, I'm going to deny the motion as to [the second statement]."

(Emphasis added.) At trial, the state played a redacted recording of defendant's interrogation. The trial court also gave a limiting instruction, advising the jury that Cuevas's statements and questions during the interview "shall not be heard as substantive evidence."

Defendant also moved to suppress his statements to Spitz made on the morning following his arrest. Defendant argued that, at the time of the interview, Spitz was acting as a law enforcement agent and was therefore required to provide defendant with a new set of *Miranda* warnings before questioning him. The trial court denied the motion, explaining that there was "no direct evidence *** of an agency" between Spitz and the police that would have required Spitz to *Mirandize* defendant. Alternatively, the trial court reasoned that, even if Spitz *was* an agent of the police, the warnings administered by Cuevas the previous evening were sufficient to allow Spitz to question defendant the following morning:

"[W]hen you take into account the short time frame of less than 16 hours and the fact that [Spitz] reminded [defendant] that he did not have to make a statement because he was being charged criminally, I believe that the combination of the *** close time frame and the reminder of part of the *Miranda* rights was sufficient to allow a police

agent to continue the questioning of *** defendant while in custody."

After a jury trial, defendant was convicted of two counts of first-degree rape.

On appeal, in eight assignments of error, defendant challenges the trial court's rulings regarding both the Cuevas "vouching" statements and defendant's statements to Spitz. We address those issues in turn.

According to defendant, the trial court's admission of Cuevas's statements regarding defendant's honesty ran afoul of the general rule that a witness may not comment on the credibility of another witness. *See, e.g., State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983) (under Oregon law, "a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth"); *State v. Milbradt*, 305 Or 621, 629, 756 P2d 620 (1988) ("The assessment of credibility is for the trier of fact[.]"). The state argues that none of the statements constitutes impermissible vouching because they were offered to provide context for defendant's responses during the interview, and not for the truth of the credibility opinions that Cuevas expressed.[3] We conclude that the trial court did not err, for the reasons articulated by the Oregon Supreme Court in its recent decision in *State v. Chandler*, 360 Or 323, 380 P3d 932 (2016).

The facts of *Chandler* are very similar to those here. The defendant, who was suspected of sexual abuse, participated in a videotaped interview with the police in which he denied the allegations. *Id.* at 325. In response, the interviewing officer repeatedly said that she believed the victims and that the defendant was not being truthful.[4] *Id.* at 325-26. The trial court denied defendant's motion to redact those

---

[3] The state also argues that defendant failed to preserve his argument except as to one statement. We reject the state's position without written discussion.

[4] The following statements are illustrative of the type of comments made by the interviewing officer in *Chandler*:

"I have a little girl that's saying what she's saying and I've got video of it and it's extremely telling 'cause it's heart breaking. The girl had no history of, you know, lying, making accusations against people that have turned out to be lies.

"*****

statements as impermissible comments on credibility. *Id.* at 327.

On review before the Supreme Court, the issue was how the vouching rule, which developed as a principle applicable to in-court testimony, applies to a witness's *out-of-court* comments on credibility. *Id.* at 331. To answer that question, the court was required to reconcile the apparent tension between its decisions in *State v. Odoms*, 313 Or 76, 83, 829 P2d 690 (1992) (explaining that "a relevant out-of-court statement, recounted at trial, generally may not be excluded merely because it is phrased in the form of an opinion"), and *State v. Charboneau*, 323 Or 38, 48, 913 P2d 308 (1996) (holding that "[a] witness's testimony or an exhibit may not, explicitly and directly, contain an opinion as to a trial witness's credibility"). *Chandler*, 360 Or at 333 ("Whereas *Charboneau* stands for the proposition that a comment on a witness's credibility may not be introduced through either trial testimony or a trial exhibit, *Odoms* indicates that the vouching rule does not apply to credibility opinions rendered outside of court."). Recognizing that an out-of-court statement commenting on the credibility of a witness has the potential to become the functional equivalent of trial testimony if admitted into evidence, the court disavowed the reasoning of the majority in *Odoms* and instead adopted the following rule, originally articulated by Justice Unis in his concurrence in *Odoms*:

> "When a person makes an out-of-court statement about the credibility of a witness or non-witness complainant, that statement is subject to the categorical prohibition against vouching evidence only if the statement is offered for the truth of the credibility opinion that it expresses. Put another way, *a court does not err in admitting an*

"And so some of [the] stuff I know you've been honest about. And I can see you act a certain way when you say something that's truthful and I see you act a different way when you're saying something that I already know is a lie.

"So it's kind of nice because you're lying[,] thinking you're helping yourself, but it's showing me what you look like and how your body reacts when you lie.

"\* \* \* \* \*

"But right now you're already lying to me, so why would I believe who you're saying you are? It goes against what you're showing me that you are."

360 Or at 326-27 (brackets in original).

*out-of-court statement as to the credibility of a witness or nonwitness complainant if the statement is offered for a relevant, non-opinion purpose."*

*Chandler*, 360 Or at 334 (emphasis added).

The Supreme Court affirmed the denial of the defendant's motion to redact the officer's statements, reasoning that those statements were offered not for the truth of the credibility opinions they expressed, but, rather, "the relevant, non-opinion purpose of providing context for the statements that defendant made during the interview." *Id.* at 339.[5]

*Chandler* is dispositive. The trial record supports the conclusion that Cuevas's statements were offered not for the truth of the credibility opinions that they expressed but for the "relevant, non-opinion purpose" of providing context for understanding defendant's responses. *Id.* at 334. At the suppression hearing, the trial court noted that the challenged statements were, first and foremost, "part of [the] conversation that the officer's having with [defendant]" and made to elicit more forthcoming responses from defendant. And, although the trial court did not explicitly rule as to the purpose for which the statements were admitted, the trial court's limiting instruction clearly directed the jury *not* to regard Cuevas's statements as substantive evidence.[6] *See Chandler*, 360 Or at 334 ("[U]nder appropriate

---

[5] The court rejected the defendant's alternative argument, that the statements were unfairly prejudicial under OEC 403, based on the defendant's failure to raise that objection below: "[A] party's objection under the vouching rule is insufficient, by itself, to alert a trial court that the party also seeks OEC 403 balancing. Rather, a party must specifically raise an objection under OEC 403 to preserve an argument under that rule." *Chandler*, 360 Or at 338.

[6] At the hearing on defendant's motion to exclude, the trial court suggested the following language for the limiting instruction:

"THE COURT: Okay. So 'the questions and statements of Senior Trooper or Detective Cuevas during his recorded interview of the defendant are not, or * * * may not be considered by you as, to be substantive evidence *but, rather, to be considered as part of the conversation with defendant.'* Or something like—

"I mean, * * * I haven't put a lot of thought into that. * * * You guys can probably * * * come up with a better instruction than that."

(Emphasis added.) The emphasized text further supports our conclusion that the challenged statements were admitted to provide context, rather than for the truth of the statements contained therein.

circumstances, a defendant may request a limiting instruction under OEC 105.")*. Finally, we note that the state did not highlight the credibility assessments either during its direct examination of Cuevas, or during its closing argument. For those reasons, we conclude that the trial court did not err when it denied defendant's motion to redact Cuevas's statement from the recording.

To the extent that defendant argues that the statements should have been excluded as unduly prejudicial under OEC 403, we reject that argument as unpreserved. The record reflects that, although defendant appears to have raised OEC 403 objections to other evidence below, he did not make an OEC 403 argument with respect to any of the statements that he identified as "vouching." Accordingly, we decline to address that argument for the first time on appeal. *See Chandler*, 360 Or at 337 (explaining that a vouching objection is distinct from an objection under OEC 403, and concluding that the defendant's "bare citation to OEC 403, absent any developed argument under that rule, was insufficient to preserve his argument under the rule").

We turn to the second issue raised by defendant, regarding whether Spitz, the DHS caseworker, violated his *Miranda* rights. As noted, defendant was read *Miranda* warnings at the beginning of his interrogation with Cuevas, at approximately 5:00 p.m. on the day of his arrest. However, defendant was not readvised of those rights before Spitz began asking him questions at 9:00 a.m. the following morning. According to defendant, that failure violated his rights under both the state and federal constitutions[7] and required the exclusion of all of his statements to Spitz.

For purposes of our analysis, we assume, without deciding, that defendant is correct that Spitz was acting as an agent of the police and that the protections of the state and federal constitutions apply to her questioning of defendant.

---

[7] Under the Oregon Constitution, *Miranda*-like warnings are required when the defendant is either in full custody or a setting that judges and officers should recognize to be "compelling." *State v. Field*, 231 Or App 115, 120, 218 P3d 551 (2009) (citations omitted). "Similarly, under the United States Constitution, *Miranda* warnings must be given when a person's freedom has been significantly restrained." *Id.* (citing *State v. Smith*, 310 Or 1, 791 P2d 836 (1990)).

Under Oregon law, to determine whether a defendant must be readvised of his *Miranda* rights, we look to whether, under the totality of the circumstances, a reasonable person could believe that his or her rights have changed since the time the warnings were originally given. *State v. Field*, 231 Or App 115, 121, 218 P3d 551 (2009). The test under federal law is largely the same. *Id.* ("[U]nder federal law, we must consider the totality of the circumstances to determine whether successive interrogations require a suspect to be re-advised of his *Miranda* rights[.]"); *see also United States v. Rodriguez-Preciado*, 399 F3d 1118, 1128 (9th Cir 2005) ("The Supreme Court has eschewed *per se* rules mandating that a suspect be re-advised of his rights in certain fixed situations in favor of a more flexible approach focusing on the totality of the circumstances."); *United States v. Andaverde*, 64 F3d 1305, 1312 (9th Cir 1995) ("The courts have generally rejected a *per se* rule as to when a suspect must be re-advised of his rights after the passage of time or a change in questioners."). Thus, the question is whether, under the totality of the circumstances, a reasonable person in defendant's position would have understood his rights to have changed from the time that Cuevas *Mirandized* him to when Spitz visited him approximately 16 hours later.

We have previously deemed *Miranda* warnings to have maintained their validity after intervals equal to, or significantly greater than, that which occurred here. *See, e.g., Field*, 231 Or App at 122 (police not required to readminister *Miranda* warnings on the second day of questioning); *Rodriguez-Preciado*, 399 F3d at 1128-29 (upholding the admissibility of statements made approximately 16 hours after *Miranda* warnings were administered); *Andaverde*, 64 F3d at 1313 (upholding as constitutional a one-day break between *Miranda* warnings and later interrogation). Moreover, defendant was either in the presence of the police or in custody from the time that he was advised of his *Miranda* rights until his interview with Spitz. *See Field*, 231 Or App at 122 (noting that the defendant "was never outside the presence of the police from the time that he was first advised of his *Miranda* rights until the time of his arrest").

Defendant points out that Spitz is not the person who gave him the *Miranda* warnings and that defendant had not had any interaction with Spitz before she arrived to question him. Under some circumstances, such as where it is unclear to a defendant that statements made to an interviewer can or will be used in court against him, that might be important. *Compare State v. Corbin*, 15 Or App 536, 546-47, 516 P2d 1314 (1973) (concluding that a defendant was required, as a matter of law, to be readvised of his *Miranda* rights before a psychiatric examination to dispel any misapprehension about the confidential nature of a doctor-patient relationship), *with State v. Stein*, 56 Or App 210, 215, 641 P2d 1148, *rev den*, 293 Or 373 (1982) (upholding the validity of "slightly truncated" warnings given prior to a psychiatric interview where the defendant was made fully aware of the adversary nature of the interview). Here, however, nothing in the record suggests that a reasonable person in defendant's position would have been confused as to the nature of the interaction. Defendant was in custody, and Spitz identified herself as a member of Child Protective Services, informed defendant that she was "doing an investigation," and reminded him that he was under no obligation to speak with her given the pending criminal charges against him. *See State v. Hurtado-Navarrete*, 258 Or App 503, 510, 309 P3d 1128, *rev den*, 354 Or 656 (2013) (taking into account that the defendant had been reminded by detectives "that he had the right to an attorney and that he did not have to speak with them" prior to questioning). Under those circumstances, we conclude that a reasonable person in defendant's circumstances would not have had any reason to believe that his rights had changed from the time of his *Miranda* warnings the previous evening to when Spitz began her questioning.

Affirmed.