No. 826 September 24, 2025 533

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RANDOLPH PAUL KAWIKA MAGPIONG,
*Defendant-Appellant.*

Lane County Circuit Court
20CR57127; A179593

Debra E. Velure, Judge.

Argued and submitted October 4, 2024.

Rankin Johnson argued the cause for appellant. Also on the brief were Andy Simrin and Andy Simrin PC.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction for one count of sodomy in the first degree, ORS 163.405, and two counts of sexual abuse in the first degree, ORS 163.427. Defendant raises five assignments of error. He first contends that the trial court erred before trial when it denied defendant's motion to exclude vouching statements made by the police during their interviews of defendant. We conclude that the trial court did not err because those statements were not offered for their truth but as context for defendant's responses during the interviews. In his second assignment of error, defendant contends that the trial court erred in not immediately providing a limiting instruction to the jury that explained that the police statements could not be considered for their truth. The court ultimately provided that limiting instruction before closing arguments. Assuming that the court erred, any error in not providing that instruction earlier was harmless. In his third assignment of error, defendant maintains that the trial court erred in declining to instruct the jury that Oregon law allows the police to lie about facts and law when interviewing suspects in order to obtain a desired response. Because defendant's proposed instruction was not accurate in all respects, the trial court did not err in declining to instruct the jury as requested. Defendant next contends that the trial court erred by denying a motion to exclude a witness's testimony that defendant had not denied the charges against him. We reject that assignment because the trial court, in fact, sustained defendant's objection to that testimony. In his fifth and final assignment of error, defendant maintains that the trial court erred in admitting a drawing by the child victim, M, after the court concluded that it was a prior consistent statement. We conclude that the trial court correctly admitted the drawing as a prior consistent statement under OEC 801(4)(a)(B). As a result, we affirm.

We first state the facts relevant to our resolution of defendant's first three assignments of error, which all relate to statements made by police officers to defendant when interrogating him about his contact with M. Towards the end of our opinion, we briefly recount some additional facts

relating to our disposition of defendant's fourth and fifth assignments of error.

M was 12 years old at the time of trial. Among other people, she lived with her brother E, her mother, and her mother's fiancé, defendant. A few years before trial, M disclosed to E that defendant had previously summoned her into a dark bathroom, told her to close her eyes, pushed her head down, and inserted what she believed was defendant's "private part" into her mouth. She later told her father's girlfriend, Kayla, who, in turn, told M's father. M drew a picture for Kayla showing what happened because she was scared and "didn't want to say it."

During a state-arranged forensic child interview that occurred after M's disclosure to Kayla, M provided the interviewer, Satterwhite, with certain details about defendant's "private part," including that it was "not circle but round," "kind of in between" soft and hard, wrinkly, and felt like skin. She recalled that she had felt nauseous after she left the bathroom. During that initial forensic interview and a subsequent one, she disclosed other intimate and sexual contacts that had been initiated by defendant.

The police interviewed defendant regarding M and her disclosures. We do not recount that interview in every detail. Defendant's arguments on appeal largely revolve around statements made by the police, where they credited M's disclosures as true and asserted to defendant that what M disclosed must have happened. For instance, Detective Terry Murry from the Springfield Police Department told defendant:

> "I sat and watched her interview with a forensic interviewer. She's not lying. When she talked about your skin feeling, like, wrinkly, she remembers it being kind of soft feeling. Those are all memories. You grabbing the back of her head and, like, pulling her towards your—your body."

Defendant responded several times, "You've got to be kidding me." Similarly, Detective Michael Tabor from the Oregon State Police stated:

> "You know, she has to, know what a penis feels like or looks like to discuss what—how it feels, you know, and she's able to describe that in detail. Well, there's only one way for her

to know that and that's to actually have been in contact with a penis. That's—that's—the only way to describe—"

Defendant responded, "I—I—I understand what you're saying." There were other similar instances in which the two detectives either directly told defendant or implied to him that M's disclosures must have been based on real events. Defendant repeatedly denied the abuse or once told the detectives "that never happened" and "[y]ou can't prove it." In response to the detective's statements, defendant suggested that M was motivated by a desire to get defendant out of the family for other reasons.

Before trial, defendant moved to exclude the admission of opinions from police and lay witnesses that M was telling the truth. Among other things, the state took the position that the detectives' statements at issue on appeal were not offered for their truth but as context for defendant's admissible responses and reactions when confronted with the accusations. The trial court ruled pre-trial that some of the offered interview statements were admissible, ultimately concluding that the statements were offered for a non-vouching purpose, namely as context for defendant's responses.

At the beginning of the trial, the court instructed the jury, among other things, that "[d]etermining the reliability or believability of evidence is ultimately your responsibility" and that "you must decide what evidence is believable."

Later during the trial, the state offered to play Exhibit 10, which was a video of Murray's initial interview of defendant. Defendant objected and, in the alternative, asked for a limiting instruction to make clear that the detective's statements about whether the detectives believed M were not offered for their truth, but solely as context for defendant's response. Defendant's proposed limiting instruction read as follows:

"You may hear evidence of a recorded interview with [defendant]. These out of court statements are offered not for their truth but to demonstrate the effect on, and the reaction of, [defendant], and should be viewed with caution. Oregon law allows the police to lie about facts and law when conducting an interview of a suspect in order to obtain a desired

response. You may not use these out-of-court statements for their truth."

The state objected to the limiting instruction contending, among other reasons, that it misstated the law. The trial court admitted the exhibit but initially did not read the proposed jury instruction. Later, the state offered and, over defendant's objection, the court admitted Exhibit 11, which was a video of a subsequent interview of defendant by both Murray and Tabor. At that time, the court again rejected defendant's similar request for a limiting instruction on the proper use of the evidence as context for its effect on the listener and not for the truth of the detectives' statements.

Two days later, which was the fourth and final day of the presentation of the case to the jury, the court specifically instructed the jury before closing argument:

"Statements made by police officers to defendant during the video-recorded interviews received in evidence are not to be considered for their truth. Questions asked are only to be considered to give meaning to defendant's answers."

The court refused, however, to instruct the jury as requested by defendant that "Oregon law allows the police to lie about facts and law when conducting an interview of a suspect in order to obtain a desired response."

The court also instructed the jury that it "is your sole responsibility to make all the decisions about the facts in the case." It further instructed the jury that it "must disregard any other witness's opinion about the credibility of any account of the underlying evidence."

The state, during its closing argument, did not refer to or rely upon the officers' interview statements about M's credibility.[1] Indeed, to the extent the recorded interviews were discussed, the focus of the state's closing was on *defendant's* statements during the interviews. The state relied on other statements made by defendant, M's disclosures in her own forensic interviews and to others, and M's trial testimony. After the closing arguments and some further final instructions, the jury deliberated and ultimately voted to

---

[1] The state in its opening statement also focused on defendant's statements and did not refer to the detectives' statements.

find defendant guilty on one count of sodomy in the first degree and two counts of sexual abuse in the first degree.

As noted, defendant's first three assignments of error relate to the detectives' statements made to defendant during their interrogation of him that either expressly stated or suggested that they believed M. In defendant's first assignment of error, defendant contends that the trial court erred in denying his pre-trial motion to exclude the admission of those statements, because the detectives' statements constituted inadmissible vouching. We reject that argument because it is inconsistent with the case law that concludes that such statements may be admitted as context for the defendant's responses when they are not offered for the truth of the matter asserted. *State v. Chandler*, 360 Or 323, 334-35, 380 P3d 982 (2016).

*Chandler* is directly on point. In that case, the state sought to admit a videotape of an interrogation in which the officer accused the defendant of child sexual abuse. *Id.* at 325. The defendant asked the court to redact several of the officer's statements, including ones where the officer told the defendant that the girl accusing him had no reason to lie, implied that her story was true, and indicated his belief that defendant was lying. *Id.* at 326. The defendant in *Chandler* contended, as defendant does here, that the statements were improper comments on the credibility of other witnesses, making them categorically inadmissible. *Id.* The trial court denied the motion, we affirmed, and the Supreme Court affirmed our decision albeit on different grounds. *Id.* at 327-29. The Supreme Court first made clear that the rule against vouching is a judicially-created evidentiary rule and that it can apply to both unsworn statements made outside of court and to sworn testimony before the court. *Id.* at 331, 334.

Turning to the vouching rule's application to the officer's unsworn statements in the interrogation, the court concluded that the rule did not apply because the officer's questions and statements to the defendant were not offered for their truth but for context in understanding the defendant's responses. *Id.* at 335. The court concluded:

"In summary, we conclude that a person's out-of-court statement about the credibility of a witness or nonwitness

> complainant is not categorically inadmissible at trial if it is offered for a relevant, non-opinion purpose. In this case, [the detective's] out-of-court comments indicating her belief that defendant was lying and that the victims were telling the truth were not offered to prove the truth of those beliefs. Rather, the trial court understood that they were going to be offered to provide relevant context for the statements that defendant made throughout the interview, a viewpoint that defendant did not challenge."

*Id.*; *see also State v. Codon*, 282 Or App 165, 173-74, 386 P3d 45 (2016), *rev den*, 361 Or 240 (2017) (applying *Chandler* and affirming the admission of detectives' interrogation statements to the defendant regarding his honesty as context for the defendant's responses). The same is true here. The state offered the detectives' statements to defendant as context for his responses and not for the truth of the detective's opinions. Although defendant accurately notes that the statements could be understood another way, which we discuss below, the statements were offered for their context and were admissible for that purpose. Defendant's denials and other responses could not have been understood without them. Further, the state did not attempt to use the detectives' statements for any other purpose.[2] Based on *Chandler* and our later application of it in *Codon*, we reject defendant's first assignment of error.

Defendant's second assignment of error contends that the trial court erred when not giving a limiting instruction on the proper use of the detectives' statements as context as soon as the two videos of the police interrogations (exhibits 10 and 11) were played for the jury. As discussed, two days later and just before closing arguments, the court instructed the jury that the statements by the officers in the videos were "not to be considered for their truth. Questions asked are only to be considered to give meaning to defendant's answers." The limiting instruction was given as one part of the closing instructions.[3] The state argues that the court properly exercised its discretion in not giving the

---

[2] At oral argument before us, defendant's counsel confirmed that the state did not attempt to use the detectives' statements for their truth.

[3] Although defendant did object to the court not providing the limiting instruction at the time the videos were played, defendant did not otherwise object to the timing of the instructions or their particular placement *within* the closing jury instructions.

limiting instruction immediately at the time the videos were played for the jury but giving it two days later before closing arguments. Thus, the issue presented to us is solely about the timing of the limiting instruction. The parties do not appear to dispute that, after his request, defendant was entitled to a limiting instruction at least on the issue of the proper use of the police statements for context for defendant's answers and not for their truth, and that such an instruction was ultimately given. *See Chandler*, 360 Or at 334 (noting that in appropriate circumstances a defendant may request a limiting instruction under OEC 105); OEC 105 (stating that when evidence is admissible for one purpose and not another, the court, "upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly").[4]

Both sides cite case law to support their position. Neither side relies on case law that address the same circumstances involved here. Many of the cited cases involve situations where either entirely inadmissible evidence or a highly prejudicial argument was presented to the jury, and the issue was whether a possibly untimely curative instruction was sufficient to cure the earlier prejudice and ensure that the defendant had a fair trial. *See e.g.*, *State v. Johnson*, 329 Or App 728, 735, 542 P3d 506 (2023), *rev den*, 372 Or 560 (2024) (concluding that it was within the trial court's discretion to not declare a mistrial and, among other things, strike improper vouching testimony and give a clear and specific curative instruction one day after the improper testimony); *State v. Halford*, 101 Or App 660, 663, 792 P2d 467 (1990) (holding that the prosecutor's impermissible comment to the jury on the defendant's right to silence during closing argument was so prejudicial that a general instruction that was not close in time to the comment was "insufficient to cure the prejudice"). Ultimately, we do not need to decide if there is a particular period of time within which the trial court must give the type of instruction requested here or if acting two days later is error. Certainly, the prompt delivery of a limiting instruction is a significant factor in its

---

[4] Both parties contend that a trial court's decision on when to give a limiting instruction is an issue we review for abuse of discretion. We ultimately do not address the standard of review because, as discussed below, we conclude that any presumed error here was harmless.

effectiveness in conveying to the jury that the evidence that it is either about to receive or had just received has both proper and improper uses. However, here, we conclude that, even assuming it was error for the court to provide defendant's limiting instruction two days later, any presumed error was harmless on this particular record because there was "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

First, we note that the court provided a clear limiting instruction that was tailored to the specific evidence at issue. The court told the jury that the statements made by the police to defendant in the video-recorded interviews were "not to be considered for their truth" but only to "give meaning to defendant's answers." Although the limiting instruction was given two days after the videos were admitted, there were only two videos played at trial that involved police statements, and the instruction unequivocally informed the jury that they were not to rely on those particular statements for their truth. Under those circumstances, the jury would not have been confused about the application of the instruction to those police-interrogation videos.

Second, this was not simply a generic instruction, although those were given too. The court instructed the jury at the opening and closing of trial that it was to decide whether evidence was believable, and it instructed the jury before closing arguments that it was to ignore any witness's opinion about the credibility of any account of the underlying evidence. "We presume that jurors follow their instructions, absent an overwhelming probability that they would have been unable to do so." *State v. Shinnick*, 288 Or App 847, 848-49, 407 P3d 877 (2017), *rev den*, 362 Or 794 (2018) (internal quotations marks omitted). In light of the specific and clear instruction tailored to limit the use of the particular evidence at issue and considering the other generic instructions on the role of the jury, we see no reason not to follow the usual presumption.

Finally, the evidence was admissible for the purpose that the state offered it for, as context for defendant's responses in the interrogation, and the state never suggested

or argued to the jury that it was using the detectives' interrogation statements for their truth. As discussed above, the state's closing emphasized defendant's statements, M's disclosures and statements in the forensic interviews, and other evidence. But it did not rely on the detectives' statements about M in the interrogation videos.

Considering all of those factors, we conclude that, even assuming the trial court abused its discretion in waiting two days to provide a limiting instruction, any error was harmless because there was little likelihood that that delay in those circumstances affected the verdict. *See Davis*, 336 Or at 32 (stating harmless error standard).[5]

We turn to defendant's third assignment of error, which contends that the trial court erred in not instructing the jury, as defendant requested, that "Oregon law allows the police to lie about the facts and the law when conducting an interview of a suspect in order to obtain a desired response." The trial court rejected that instruction because it was "concerned with the *** breadth" of the instruction. We conclude that the trial court did not err in refusing to give that instruction.

"It is well settled that it is not error for a trial court to refuse to give an instruction unless that instruction was correct in all respects." *State v. Lopez-Minjarez*, 289 Or App 403, 406-07, 410 P3d 1109 (2017), *rev den*, 363 Or 390 (2018). Although Oregon law may permit the police to lie in interrogating suspects in many instances and depending on the circumstances, it is not accurate suggest to the jury that

---

[5] This situation differs significantly from our recent opinion in *State v. Waters*, 343 Or App 192, ___ P3d ___ (2025), which also involved recorded officer statements endorsing a complainant's version of events. In *Waters*, the assignment of error related to the court's OEC 403 balancing of the probative value and prejudicial effect of the officer's statements. *Id.* at 199. We reversed the trial court's ruling on the admissibility of the exhibit, based both on our conclusion that the officer's statements on the recording had minimal probative value in terms of actually providing context to the defendant's statements, and based on our assessment that the trial court overlooked the risk of prejudice created by introducing evidence that posed vouching concerns. *Id.* at 201-03. We further noted that the trial court erred by admitting the entirety of the exhibit rather than just a portion or providing a limiting instruction to address the vouching risks. *Id.* at 204. The assessment in this matter of the harm that stems from the timing of a limiting instruction is substantially different from the OEC 403 balancing that we discussed in *Waters*.

police may always lie to get a desired response. Oregon law is more nuanced on that issue. Oregon law protects individuals from coercive police practices during interrogations and bars the admission of statements that are not shown to be a voluntary product of the individual's free will. *State v. Chavez-Meza*, 301 Or App 373, 386-87, 456 P3d 322 (2019), *rev den*, 366 Or 493 (2020). Although statements by the police that are deceptive and intended to obtain a desired response do not automatically render a suspect's responses involuntary, they can be a factor that weighs against concluding that the statements are voluntary. *Id.* at 390; *see also State v. Cochran*, 72 Or App 499, 512, 696 P2d 1114 (1985) (stating that "police deception weighs against a finding of voluntariness"); *State v. Burdick*, 57 Or App 601, 606-07, 646 P2d 91 (1982) (noting that, although police "trickery or false statements" *alone* may not be sufficiently coercive to result in involuntariness, the deceitful conduct was a factor in excluding a suspect's statements that were not shown to be voluntary). Thus, certain police deception that is designed to get a desired response may *not* be permitted under Oregon law when considered together with other factors relating to coerciveness of the interrogation, such as whether the officer's statements induced the person to "make admissions by the influence of hope or fear." *Chavez-Meza*, 301 Or App at 387 (*citing State v. Jackson*, 364 Or 1, 22, 430 P3d 1067 (2018)). Because defendant's proposed instruction was incomplete and not accurate in all respects, the trial court did not err in refusing to instruct the jury as requested.

We turn to and summarily resolve defendant's fourth assignment of error. Defendant contends that the trial court erred in denying a motion to exclude testimony of a witness from the Oregon Department of Human Service (ODHS) whom defense counsel anticipated would testify that defendant had not denied the allegations against him. Based on our review of the record, the court reserved ruling based on the parties' understanding of the expected questions and testimony of the ODHS witness, but the court instructed counsel to raise objections if there were objections to particular testimony when the witness took the stand. Defendant did later object to particular testimony as the ODHS witness was responding to a question, and the court

*sustained* defendant's objection. Defendant did not seek any other relief. As a result, we see no basis for concluding that the trial court erred.

In his fifth assignment of error, defendant contends that the trial court erred by admitting a drawing that M made when disclosing her abuse to her father's girlfriend, Kayla. The drawing is a rudimentary picture of the abuse in the bathroom with M's notation, "I was in my room and he said come in the bathroom and . . ." (Ellipses in original.). M explained that she drew the picture because she was scared and "didn't want to say it." The trial court admitted the picture as a prior consistent statement under OEC 801(4)(a)(B), which provides that a statement is not hearsay if:

> "(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement:
>
> "* * * * *
>
> "(B) Is consistent with the testimony of the witness and is offered to rebut an inconsistent statement or an express or implied charge against the witness of recent fabrication or improper influence or motive[.]"

OEC 801(4)(a)(B). Defendant's argument on appeal is limited to subparagraph (B) and his contention that M's drawing was not a true "*prior*" statement because it did not occur before she had a motive to fabricate the allegations.[6] According to defendant, and as brought up during his opening remarks at trial, M was motivated to fabricate the allegations to break up defendant and her mother's contentious relationship. Defendant contends that the statement was not a "prior" consistent statement but a contemporaneous one, occurring at the same time that M was attempting to break up that relationship. The state contends that the drawing was admissible as a prior consistent statement because it was made before M's forensic child sexual abuse interview with Satterwhite, and it was necessary to rebut defendant's implication, elicited during cross-examination of Satterwhite, that the interview techniques had influenced M's allegations.

---

[6] Defendant does not dispute that the drawing qualifies as a statement.

We agree with the state that the drawing was admissible as a prior consistent statement to rebut the implication that Satterwhite influenced M's answers in the forensic interview. As noted, M disclosed her abuse and shared her picture with Kayla. M *later* had a forensic interview with Satterwhite during which M also discussed the abuse. Defendant cross-examined Satterwhite at trial. During defendant's cross-examination, defendant suggested that M may have been unintentionally coached during the interview and investigation and may have been asked questions that suggested and influenced the child's answers. The trial court properly concluded that the drawing was an admissible *prior* consistent statement because the drawing was made before the forensic interview and was offered to rebut defendant's implied charge that the interviewer influenced M in implicating defendant. We therefore reject defendant's fifth assignment of error.

Finally, although defendant does not separately assign error on this point, defendant argues in conclusion that, if we conclude that no single error in this case requires reversal on its own, we should conclude that a combination and accumulation of independently harmless errors prejudiced him and should result in reversal. Defendant raises a theory of cumulative error. Assuming that is a cognizable claim of error, which we do not decide, we do not need to reach that issue because, as discussed above, we do not find multiple errors that were harmless. Although we did assume but not conclude that the trial court may have erred in just one respect, we concluded that that *single* assumed error was harmless. In sum, for all of the reasons expressed above, we affirm.

Affirmed.