350 June 4, 2026 No. 28

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

ERVAN RONELL HERRING,
*Respondent on Review.*

(CC 18CR34525) (CA A174188) (SC S070999)

On review from the Court of Appeals.*

Argued and submitted March 3, 2025, at Lewis & Clark Law School, Portland, Oregon.

Rebecca M. Auten, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Zachary Lovett Mazer, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the briefs for respondent on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James, and Masih, Justices, and Pagán, Judge, Justice pro tempore.**

GARRETT, J.

The decision of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the Court of Appeals for further proceedings.

_____

* Appeal from Multnomah County Circuit Court, Benjamin N. Souede, Judge. 331 Or App 193, 545 P3d 143 (2024).

** Bushong, J., did not participate in the consideration or decision of this case.

**GARRETT, J.**

In this criminal case, defendant was charged with attempting to kill a rival gang member by shooting at him. The issues on review concern two categories of contested evidence. First, to establish defendant's motive for the shooting, the trial court allowed the state to present evidence under OEC 404(3) of defendant's gang membership, as well as evidence of gang culture and rivalries. Second, to establish defendant's access to a gun that could have been used in the shooting, the court allowed the state to present gun-related evidence taken from the home of a codefendant. The Court of Appeals affirmed the admission of the gun evidence, but it held that the evidence of gang rivalry required character reasoning and that the trial court had therefore erred in admitting it under OEC 404(3) as noncharacter evidence. The Court of Appeals reversed defendant's convictions and remanded.

On the state's petition for review, we reverse the Court of Appeals' decision with respect to the gang evidence. We conclude that the state offered the gang evidence to establish that defendant had a reason to be hostile toward the victim by virtue of his gang membership and that that theory of relevance does not rely on reasoning about defendant's character. The state therefore offered a noncharacter theory of relevance. That conclusion is not affected by *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024), which we decided after the Court of Appeals' decision in this case and in which we stated that OEC 404(4), not OEC 404(3), applies to other acts of the defendant in a criminal case. We affirm the Court of Appeals' decision with respect to the admission of the gun evidence and remand to the Court of Appeals to address defendant's remaining assignments of error.

## I.  BACKGROUND

The parties do not dispute the procedural and historical facts, which we take from the trial court record. Following a daytime shooting outside a Portland hospital in February 2018, the state charged defendant and codefendant, who are brothers, with attempted murder, attempted first-degree assault, unlawful use of a weapon, and felon in possession of a firearm. The state alleged that defendant

fired six shots at the victim, S, using a gun provided by codefendant, though none of the shots hit S.[1]

A.    *Gang Evidence*

The state moved *in limine* to admit evidence of gang rivalry as grounds for establishing defendant's motive to shoot S. According to the state, defendant and codefendant were longtime members of the Woodlawn Park Bloods. S was affiliated with a rival gang, the Kerby Blocc Crips. In 1997, S shot and killed M, who was a member of the Woodlawn Park Bloods and the brother of defendant and codefendant. S was convicted of killing M and served a term of incarceration.

By February 2018, S had been released from prison and had returned to the Portland area. On the day of the shooting, S went to the hospital to visit a family member. By chance, defendant and codefendant, along with a third family member, were in the parking lot of the hospital after visiting their own relative there. S was wearing blue apparel, which is associated with the Crips. Codefendant was wearing black and red, which is associated with the Bloods. The state alleged that, from across the parking lot, defendant recognized S, obtained a gun from codefendant's car, and attempted to kill S by shooting at him six times.

In addition to presenting evidence in the form of eyewitness accounts, surveillance footage of defendant's and codefendant's activities immediately before and after the shooting, and gun evidence obtained from codefendant's house (discussed below), the state sought to offer evidence of gang membership, gang culture, and the violent gang rivalry underlying the state's theory of the shooting. The state argued for the admissibility of the evidence under, among other things, OEC 404(3); that rule provides that evidence of "other crimes, wrongs or acts," although inadmissible to prove "the character of a person in order to show that the person acted in conformity therewith," may be admissible for other purposes, including to prove "motive." The state's argument for admissibility was that the competing gang affiliations and rivalries, as well as S's prior murder of M,

---

[1] Although the state charged defendant and codefendant jointly and they were tried together, defendant had a jury trial, while codefendant waived his right to jury. Codefendant was acquitted on all charges by the trial court.

a "gang associate and family member," tended to establish defendant's motive for attempting to kill S at the hospital.

The state said that it would attempt to establish the facts of gang affiliation, culture, and rivalry through the expert testimony of a police officer familiar with gang activity in and around Portland. According to the state, that testimony would provide the jury with a picture of modern gang rivalry and "warfare." The state argued that, if such evidence were presented, then the hospital shooting "can readily be explained as shooting at a rival member." The state added that it intended to introduce evidence that defendant "had an additional motive for attempting to kill [S] based on evidence that [S] had killed a member of defendant['s] family who was a Woodlawn Park Blood."[2]

At a pretrial hearing on the motion, defendant opposed admitting the evidence, contending that its relevance depends on an impermissible inference about defendant's character, as that term is used in OEC 404(3). Defendant further argued that the evidence should be excluded under OEC 403 because its probative value is substantially outweighed by the risk of unfair prejudice. Defendant argued that the state did not need the gang evidence to establish motive because the state could establish motive by offering evidence that S had killed defendant's brother.

The trial court initially expressed concern that it would be unable to rule on the motion, because the state had not presented testimony from its expert witness and it was unclear what, exactly, he would testify to at trial. But the parties agreed that the trial court could rule on the general categories of the state's proposed evidence, while defendant reserved the ability to challenge specific elements of the expert's testimony at a later OEC 104 hearing. With that understanding, the trial court ruled that much of the gang evidence was relevant and admissible under OEC 404(3) to support the state's theory that the shooting was gang-related retaliation:

---

[2] Prior to the state's motion *in limine*, codefendant had filed a motion *in limine* to prevent any witness for the state from testifying that codefendant is a known gang member or affiliate. Defendant later joined that motion. The state's motion was not filed as a response to codefendant's motion, though the trial court's ruling on the state's motion appears to have resolved codefendant's motion.

"A relevant purpose of evidence showing gang membership, showing gang rivalry in general between the two gangs, and showing that that rivalry in the gang culture is expressed in terms of, 'He shoots at us, we shoot at him,' that sort of thing.

"That much seems to me relevant evidence to explain why—the State's version of why this episode occurred, and why the defendants would be people who have a motive to engage in it."

The trial court further explained that defendant's additional, family-based motive—the death of his brother—did not make the evidence supporting the gang-related motive irrelevant to the shooting.

Based on that reasoning, the trial court ruled that it would admit, "first of all, gang membership of the parties believed to be involved; the existence of the rivalry between those gangs; gang culture; [and] establishing the kind of way that rivalry is expressed in terms of violence." The court explained, however, that it would "not allow specific bad acts by individuals" and that its general ruling was subject to further OEC 403 balancing on specific items of testimony by the state's expert at a later OEC 104 hearing.

The case was transferred to a different judge for trial, who adopted the prior judge's ruling on the gang evidence and presided over the OEC 104 hearing. At that hearing, the state offered testimony from its gang expert, Officer Asheim, so the parties could address which specific components of that testimony were encompassed within the court's prior ruling and so defendant could raise any further objections based on foundation, relevance, and OEC 403 balancing.[3]

---

[3] As discussed below, defendant assigned error to the trial court's pretrial ruling on the state's motion *in limine*. The Court of Appeals reversed based on that assignment. *State v. Herring*, 331 Or App 193, 202, 211, 545 P3d 143 (2024). When a party on appeal challenges a trial court's pretrial ruling on a motion *in limine*, "we ordinarily will evaluate that argument in light of the record made before the trial court when it issued the order, not the trial record as it may have developed at some later point." *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012). In this case, however, the trial court's initial ruling addressed general categories of evidence that the parties intended to develop at the OEC 104 hearing. As a result, the OEC 104 hearing was an extension of those proceedings, and we consider the evidence presented at that hearing as informing the scope of the trial court's ruling.

Officer Asheim first testified as to his experience with street gangs in Portland. Asheim explained that gangs gain power and notoriety among other gangs through their willingness to commit violence, and individual gang members gain status and respect within their gang through their willingness to commit violent acts for the gang. He further noted that the existence of rival gangs provides an opportunity to demonstrate one's willingness to do violence for the gang. Where one gang considers another gang to be a rival, then the gang might attempt to enhance its power by demonstrating that it is willing to commit violence directed toward the rival gang. Officer Asheim testified that those gang rivalries can build into a cycle of retaliation: "[I]f you punch me, then I'm going to shoot you. If you shoot one of us, we're going to shoot two of you." Officer Asheim described this case as an example of such a cycle: S killed defendant's brother and fellow gang member in 1997, and "this cycle of retaliation and violence continues over that murder."

According to Officer Asheim, violent retaliation can be triggered by any sign of disrespect. A gang member might wear clothing that signals a threat to or disrespect of a rival gang, such as a Bloods member wearing a hat that says CK (for Crips Killer) or a Crips member wearing a hat that says BK (for Blood Killer). Officer Asheim testified that such a showing of disrespect can lead to violence.

Officer Asheim also testified that a member's status within a gang might be reflected in a label or moniker. The label "OG" refers to an "Original Gangster," which, according to Officer Asheim, refers to someone who has been associated with the gang for a long time and has prestige within the gang as a result. A gang member might also have a moniker or "hood name." A moniker that begins with the word "Big," for example, often means that the person has been in the gang for a long time and has a lineage of affiliated junior gang members. Officer Asheim testified that gang members often get gang-related tattoos to demonstrate allegiance to the gang. Consistent with that, the state offered photographs of defendant's tattoos. Those included tattoos indicating defendant's "hood name," the word "original," and the word "Woodlawn." Based on his experience with

Portland gangs and his review of the record in this case, Officer Asheim testified that he believed defendant to be a member of the Woodlawn Park Bloods who holds the status of "OG" within that gang.

Following the state's extensive proffer of Officer Asheim's testimony, the trial court assessed the parties' arguments. The trial court described the testimony as illustrating the historically violent rivalry between the Bloods and Crips and how it "still continues." The trial court included within that category "the underlying motivations that animate that violence." Defendant agreed that that testimony was within the scope of the court's prior ruling and did not raise new objections to that general category as character evidence.[4] But defendant objected under OEC 403 to the admissibility of certain evidence, including, among other things, defendant's status within the gang. In response, the state argued that defendant's status was probative because it showed his "level of commitment to the gang" and his motivation to "retain that status." When asked whether the state's theory of motive was that the shooting was gang-related or family-related, the state indicated that "it's all tied together." The trial court ruled that the evidence would be admissible, and Officer Asheim provided similar testimony at trial.

B.  *Weapons Evidence*

As explained above, the state's theory was that defendant shot at S using a gun that he obtained from codefendant's car immediately before the shooting. The state based that theory on surveillance footage and eyewitness accounts. Although surveillance footage did not show the shooting itself, footage showed defendant leaving the hospital minutes before the shooting and showed a person matching defendant's description accessing the trunk of codefendant's car immediately before the shooting. An eyewitness saw the shooter, matching defendant's description, get into a car that police later traced to defendant's wife.

---

[4]  Defendant's counsel was not present for that hearing but adopted the arguments presented by codefendant's counsel. At the next hearing, the trial court asked defendant's counsel if she had any additional arguments to make. She indicated that "it was all covered" by the arguments presented by codefendant's counsel.

When police officers arrived, they found six .40-caliber shell casings near where the person matching defendant's description had been standing. Forensic analysis of the casings showed markings consistent with guns produced by Glock and Smith & Wesson. Around three months after the shooting, officers searched codefendant's home and found a .40 caliber Glock handgun, a manufacturer's box for a .40 caliber Glock handgun, several .40 caliber Glock magazines of varying sizes, and .40 caliber ammunition. The serial number on the handgun did not match the serial number on the manufacturer's box. The handgun also did not match the casings found at the scene of the shooting.

Before trial, codefendant moved to exclude the gun evidence, arguing that it was both irrelevant—because the gun did not match the casings at the scene—and unfairly prejudicial under OEC 403. The state argued that the fact that codefendant possessed an empty box for a .40 caliber Glock that did not correspond to the gun found in his home could support an inference that codefendant was missing a .40 caliber Glock, which was consistent with the type of gun used in the shooting. The trial court concluded that the evidence was relevant under OEC 401 and that the risk of unfair prejudice to defendant was too remote to justify exclusion under OEC 403.

Defendant raised a similar objection before trial, arguing that the gun evidence should be admissible only as to codefendant. According to defendant, the evidence was irrelevant as to him and unfairly prejudicial because "that's not a gun [defendant] had anything to do with." The state argued that the evidence was relevant to both defendants because, based on the surveillance footage, the state's theory was that defendant obtained the gun used in the shooting from codefendant's car. The trial court again concluded that the evidence was relevant under OEC 401. And the trial court explained that, as to defendant, there was little risk of unfair prejudice—namely, the association between violence and the possession of weapons—because the gun had not been found at defendant's own house. The trial court therefore did not exclude the evidence under OEC 403.

At trial, the state offered the gun evidence along with the testimony of an expert, explaining that the shell

casings found at the scene of the shooting were consistent with a .40 caliber handgun produced by Glock. The expert testified that the shell casings did not match the .40 caliber Glock found at codefendant's home and that that gun did not match the empty Glock box found there, either. From that evidence, the state argued that codefendant was missing a gun consistent with the one used in the shooting.

Based on that evidence, and the other evidence presented at trial, the jury unanimously convicted defendant of attempted first-degree assault with a firearm and unlawful use of a firearm.[5] Defendant waived a jury as to the felon in possession of a firearm charge; the trial court found him guilty.

C.  *Appeal*

On appeal, defendant raised 11 assignments of error. The first assignment of error challenged the trial court's pretrial ruling that the gang evidence was admissible under OEC 404(3) to prove motive without relying impermissibly on defendant's character. Assignments of error two through eight challenged the trial court's admission of specific pieces of gang-related evidence. Assignment of error nine challenged the trial court's denial of defendant's motion for new trial. Assignment of error 10 challenged the trial court's admission of the gun evidence found in codefendant's house, as described above. And assignment of error 11 challenged the jury instructions.

The Court of Appeals began by addressing the trial court's pretrial ruling that the state's gang evidence was admissible under OEC 404(3) on a noncharacter theory of relevance. In assessing that ruling, the court identified the other-acts evidence at issue in this case as being limited to defendant's own membership in the Woodlawn Park Bloods. The court explained that the state's more general evidence of gang rivalry and culture was not properly considered "other acts" evidence at all, because it is not evidence of defendant's

---

[5] The jury also found defendant guilty of attempted murder by nonunanimous verdict. The state dismissed that count after the United States Supreme Court issued *Ramos v. Louisiana*, 590 US 83, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (holding that United States Constitution prohibits conviction by less than unanimous jury).

own conduct, but rather "gives context and meaning to defendant's gang membership." *State v. Herring*, 331 Or App 193, 206, 545 P3d 143 (2024). Thus, the "relevance of defendant's gang membership * * * depends on the context and meaning with which the additional [gang] evidence imbued it." *Id.*

The Court of Appeals also explained that the fact that S had killed defendant's brother, M, was distinct from the state's asserted gang-related motive for the shooting. That is, the Court of Appeals understood the state to have offered two distinct motives for the shooting: a family-vengeance motive and a gang-rivalry motive. The Court of Appeals considered the fact that S had killed defendant's brother as relevant only to the family-vengeance motive for the shooting and not as relevant to the gang-related motive. *Id.* at 205-06; *see also id.* at 206 n 4 (explaining that, even if the death of M was gang-related, "the state's theory of relevance was not limited to that motive").

With that understanding, the court considered whether the state's motive theory for the gang evidence required reasoning about defendant's character. To do so, the court examined the chain of reasoning connecting the gang evidence to the state's motive theory and determined that it required two intermediate inferences:

> "(1)   because defendant is a member of the gang, defendant has personally adopted its criminal tendencies and lifestyle, including the violent rivalry with Crips members, and (2)   because he has adopted his gang's tendencies and lifestyle, defendant has a propensity to commit violent acts generally and against Crips members in particular."

*Id.* at 212. The court explained that the state wanted the factfinder to conclude from those inferences "that defendant acted in accordance with his adherence to his gang's rivalry with the victim's gang and to violent gang 'culture' in committing the charged acts." *Id.*

The court then concluded "that the state's theory of relevance employed impermissible propensity-based reasoning, because it required the factfinder 'to rely on an inference about the defendant's bad character and resultant propensity to commit criminal acts.'" *Id.* Based on its conclusion

that the relevance depended on an inference about defendant's character, as that term is applied in OEC 404(3), the court held that "[t]he trial court erred in admitting the gang evidence." *Id.* The Court of Appeals did not consider whether the evidence would nevertheless be admissible as character evidence under OEC 404(4). *Id.* at 212 n 7. The court further concluded that the trial court's error was not harmless, warranting reversal on all counts, and remanded the case to the trial court. *Id.* at 213-14.

Because of that disposition, the Court of Appeals noted that it was unnecessary to address most of defendant's other assignments of error. *Id.* at 195. Nevertheless, observing that the issue was likely to arise on remand, the court also addressed the admissibility of the gun evidence found in codefendant's home. *Id.* at 214. The court concluded that "the evidence meets the very low threshold for relevancy." *Id.* at 215 (internal quotation marks omitted). The court further concluded that the trial court did not abuse its discretion in admitting the evidence over defendant's OEC 403 objection, because the probative value was not speculative and the risk of unfair prejudice was low. *Id.* at 215-16.

The state petitioned this court to review the Court of Appeals' decision with respect to the character evidence issue. In his response to that petition, defendant included a contingent request to review the Court of Appeals' decision with respect to the gun evidence. We allowed review of both.

## II.   ANALYSIS

The parties renew their arguments on review in this court, disputing whether (1) the relevance of the gang evidence depends on an inference about defendant's character and (2) the trial court correctly admitted the gun evidence.

A.   *Gang Evidence*

### 1.   *Legal framework*

The admissibility of the gang evidence concerns the relevance and permissible uses of "other acts" evidence, which this court has addressed several times. We recently revised the framework for analyzing those issues in *Davis*. As described further below, *Davis* explained that OEC 404(4)

is the applicable provision regarding evidence of other acts by a defendant in a criminal case. 372 Or at 633. The trial court's ruling and the Court of Appeals' decision in this case predate *Davis* and applied OEC 404(3). Their application of OEC 404(3) does not, however, preclude or affect our analysis of the issues on review. We begin with an overview of the relevant law.

To be admissible, evidence must be relevant. OEC 402. "Evidence is relevant if it increases or decreases, even slightly, the probability of the existence of any material fact in issue." *State v. Cox*, 337 Or 477, 485, 98 P3d 1103 (2004); *see also* OEC 401 (defining "relevant evidence"). Whether evidence is relevant presents a question of law. *State v. Naudain*, 368 Or 140, 150, 487 P3d 32 (2021). Relevant evidence is generally admissible unless it is subject to exclusion by another source of law. OEC 402.

Relevant evidence sometimes includes evidence of "other acts"—that is, acts separate from those acts that form the basis of the criminal charge or civil cause of action. The permissible uses of "other acts" are specifically addressed by two rules of evidence.

The first of those is OEC 404(3). This court, as explained further below, has construed OEC 404(3) to be applicable in civil cases and criminal cases *except* to other acts of the criminal defendant. OEC 404(3) distinguishes between the use of other-acts evidence to prove "character" and other uses. The first sentence of OEC 404(3) provides, "Evidence of other crimes, wrongs or acts is not admissible to prove *the character* of a person *in order to show that the person acted in conformity therewith*." (Emphasis added.) The next sentence of that rule clarifies that that prohibition does not apply to other uses, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." When a proponent of evidence seeks the admission of evidence under OEC 404(3), it is a question of law whether a proponent's theory of relevance requires character reasoning. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017).

Although the evidence code does not define "character" evidence, the meaning of "character" is discussed in

the commentary to OEC 406, a rule that permits admitting relevant evidence of "habit." "Habit" is defined as "a person's regular practice of meeting a particular kind of situation with a specific, distinctive type of conduct." OEC 406(2). The commentary to that rule contrasts "habit" and "character": "'Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness.'" OEC 406 Commentary (1981) (quoting Edward W. Cleary, ed., *McCormick on Evidence* § 195, 462 (2d ed 1972)). And "[a] character trait, such as character for care, is a person's tendency to act in a certain way in all the varying situations of life—in business, in family life, in handling an automobile, in walking across the street." *Id*. This court has similarly defined character as "evidence of a particular human trait, such as truthfulness, honesty, temperance, carefulness, or peacefulness, *etc*.," that manifests itself "in all the varying situations of life." *State v. Marshall*, 312 Or 367, 372, 823 P2d 961 (1991).

Second, in 1997, the legislature adopted OEC 404(4), which provides that, in criminal cases, evidence of other acts *by the defendant* is "admissible if relevant," subject to other exclusions (though no longer subject to the categorical bar on character evidence in OEC 404(3)). Or Laws 1997, ch. 313, § 29. Specifically, that rule provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a)   [OEC 406 through 412] and, to the extent required by the United States       Constitution   or   the   Oregon Constitution, [OEC 403];

"(b)   The rules of evidence relating to privilege and hearsay;

"(c)   The Oregon Constitution; and

"(d)   The United States Constitution."

OEC 404(4). In short, under OEC 404(4), unlike OEC 404(3), other-acts evidence is admissible "if relevant" *even if* the theory of relevance depends on character reasoning, so long as exclusion of the evidence is not required by the other specified sources of law. *See State v. Williams*, 357 Or 1, 20,

346 P3d 455 (2015) (recognizing that the categorical bar on character evidence in OEC 404(3) "is no longer the rule" in criminal cases).

Regardless of whether other-acts evidence is evaluated under OEC 404(3) or OEC 404(4), the evidence may still be excluded under OEC 403 if the "probative value" of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." OEC 403; *see Baughman*, 361 Or at 402 ("Considering the text, context, and legislative history of OEC 404(4), we are persuaded that, in enacting that rule of evidence, the legislature intended trial courts to conduct the balancing required by OEC 403 according to its terms."); *see also Williams*, 357 Or at 20 ("OEC 404(4) makes 'other acts' evidence admissible if it is relevant under OEC 401 and admissible under OEC 403."). The decision whether to exclude evidence under OEC 403 balancing is committed to the discretion of the trial court, and appellate courts review for abuse of discretion. *Baughman*, 361 Or at 406.

Importantly, although character evidence is no longer categorically excluded in criminal cases, it can be nonetheless important to evaluate the theory of relevance when evidence is offered under OEC 404(4), because the presence of character reasoning can play an important role in applying the OEC 403 balancing that OEC 404(4) requires. Other-acts evidence that is offered for noncharacter purposes (such as to prove motive, intent, identity, or lack of mistake or accident) "generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence." *Williams*, 357 Or at 19. On the other hand, if other-acts evidence "goes only to character," then "it is more likely that the evidence will be excluded." *Id.* at 20. In other words, when applying OEC 404(4), trial courts should consider whether the evidence is being offered for a noncharacter purpose. *See Davis*, 372 Or at 635 ("considering how the proffered evidence would have fared under [OEC 404(3)] will have a significant effect on whether the trial court admits

that evidence" under OEC 403 (internal quotation marks omitted)).

Thus, when a trial court determines whether evidence depends on character reasoning, the trial court is resolving a legal question that underlies its exercise of discretion afforded by OEC 403. *See Oakmont, LLC v. Dept. of Rev.*, 359 Or 779, 789, 377 P3d 523 (2016) ("In reviewing a ruling for abuse of discretion, it can be important to distinguish the factual and legal issues that underlie an agency['s] or a trial court's exercise of discretion."). We continue to review that predicate legal determination for errors of law, even though we review the trial court's OEC 403 balancing for abuse of discretion. *See id.* ("[W]hen a trial court's exercise of discretion rests on an incorrect legal premise, an appellate court will review that legal premise independently."); *State v. Hightower*, 361 Or 412, 421, 393 P3d 224 (2017) (recognizing that "legal determinations that are predicates for the exercise of discretion are reviewed for errors of law").

In *Baughman*, this court explained that, in criminal cases, OEC 404(4) supersedes the first sentence of OEC 404(3) (the categorical bar on evidence of character offered to show that a person acted "in conformity therewith"), but does not supersede the second sentence of OEC 404(3) (which permits the use of other-acts evidence for other purposes). *Baughman*, 361 Or at 404. The court explained that, if the evidence is admissible for a noncharacter theory of relevance under the second sentence of OEC 404(3), then it is unnecessary to apply OEC 404(4). *Id.* Both the trial court and the Court of Appeals in this case, relying on *Baughman*, applied OEC 404(3) and reached contrary results. Neither found it necessary to apply OEC 404(4).

Since then, this court decided *Davis*, which explained that "the applicable subsection of OEC 404 that applies to acts of a defendant offered in a criminal trial is OEC 404(4), not OEC 404(3)." 372 Or at 633. That change, however, does not affect the substantive legal principles that a trial court must apply.

*Davis* recognizes that, under OEC 404(4), other-acts evidence must still be relevant under OEC 401 and survive

OEC 403 balancing. *Id.* at 634-35. And, to conduct the OEC 403 balancing described by *Williams*, a trial court should assess whether the evidence is being offered to show a defendant's character or, instead, for another purpose, such as those set out in OEC 404(3). *See id.* at 635 ("Even though OEC 404(3) is no longer technically controlling of other acts of a defendant in a criminal trial, considering how the proffered evidence would have fared under that rule will have a significant effect on whether the trial court admits that evidence under the balancing required by OEC 403." (Internal quotation marks omitted.)).

In sum, although the trial court and the Court of Appeals both analyzed the gang evidence under OEC 404(3)—whereas we expect that courts post-*Davis* will analyze other acts by a criminal defendant under OEC 404(4)—the key legal principles remain the same, insofar as they affect our review in this case. Under both *Davis* and *Baughman*, a trial court assessing the admissibility of other-acts evidence in a criminal case should determine whether the evidence is relevant, whether the state's theory of relevance involves character reasoning, and whether the probative value is substantially outweighed by the risk of unfair prejudice in light of the character or noncharacter nature of the evidence. *Davis*, 372 Or at 634-35. On appeal, a reviewing court considers, as a legal question that underlies the trial court's OEC 403 balancing, whether the state offered other-acts evidence on a theory of relevance that requires character reasoning. If it does not—that is, if the state has a theory of relevance that would support admission of the evidence under OEC 404(3)—then the evidence is more likely to survive OEC 403 balancing regardless of whether the evidence is examined under OEC 404(3) or OEC 404(4). We review that legal question for errors of law.

2.  *Motive and character*

We agree with the Court of Appeals that the other-acts evidence in this case is correctly defined as defendant's own membership in the Woodlawn Park Bloods. The state's other evidence of gang culture and gang rivalry more generally is not evidence of defendant's own "acts." However, the state's theory of relevance relies on the broader evidence of

gang culture and rivalry to give meaning to defendant's gang membership. *Herring*, 331 Or App at 206. In other words, under the state's theory, the fact that defendant held membership in the gang would not be relevant to the charged crime without the additional evidence that the state offered of gang culture, rivalry, and cycles of retaliatory violence. As a result, we assess the state's theory of relevance for the other-acts evidence within the context of the broader gang evidence. More to the point, we consider whether the state's theory requires character reasoning.

In assessing whether other-acts evidence is offered to prove character, "[t]he proponent's theory of relevance is critical." *State v. Skillicorn*, 367 Or 464, 475, 479 P3d 254 (2021). Evidence can be relevant to establishing different facts, and it can be relevant to establishing the same fact through different theories of relevance. The task at this step is to determine whether the proponent's theory of relevance logically depends on using the evidence to reason about a defendant's character. That is a distinct question from whether evidence that does *not* logically require character reasoning might still present a risk that the factfinder would misuse it for character purposes—a question that is material to OEC 403 balancing. *See Davis*, 372 Or at 636 (explaining that, "despite a noncharacter purpose being offered by the proponent of the evidence, a jury or factfinder could perceive the evidence as relying on character and action in conformity with character as its source of relevance to the trial").

Whether a proponent's theory of relevance relies on character reasoning is "not determined solely by assessing whether the ultimate fact that the proponent seeks to prove is a fact about a person's character or propensity to commit crimes." *State v. Jackson*, 368 Or 705, 716-17, 498 P3d 788 (2021). A theory of relevance depends on a character inference, "regardless of the ultimate fact to be proved, whenever the chain of logical relevance connecting the evidence to the fact it is proffered to prove relies on an inference relating to [a person's] character or propensities." *Id*. at 717 (brackets in original; internal quotation marks omitted). To facilitate that inquiry, the proponent must articulate a theory

of relevance by identifying "the inferences that it wants the factfinder to draw based on the evidence and explain how those inferences make the existence of a fact of consequence more or less probable than it would be without the evidence." *Skillicorn*, 367 Or at 475.

In this case, the state offered the gang evidence to establish defendant's motive to shoot at S and, thus, prove the identity of the shooter. A motive is a reason to act. Specifically, it is "a cause or reason that moves the will and induces action, an inducement which leads to or tempts the mind to commit an act." *State v. Hampton*, 317 Or 251, 257 n 12, 855 P2d 621 (1993) (internal quotation marks omitted). A person with a motive to act is more likely to act than a person with no motive. Thus, evidence of motive can be relevant because it can make "more probable the fact that defendant committed the crime than if such a motive were not established." *Id*. at 258.

Some cases present facts that can make it difficult to determine whether a theory of evidence that is ostensibly "motive"-based is, in reality, a character-based theory. *See id.* at 257 n 12 (applying the bar on character evidence in OEC 404(3) and stating that "courts must be on guard to prevent the motive label from being used to smuggle forbidden evidence" of character to the jury (internal quotation marks omitted)). The problem arises when a proponent uses other-acts evidence to establish a character trait and then argues that the defendant had a "motive" for acting based on little more than that character trait. That is simply character reasoning by another name.

As we have discussed, the relevance of other-acts evidence relies on character reasoning when it is used to establish that a person's action was compelled or induced by a particular character trait that the person possesses. In contrast, a leading commentator has distinguished "motive" as relying on "a situationally specific emotion," which we take to mean an emotion that an ordinary person might experience in a given situation, regardless of deeper character traits. Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 3:15, 3-96 (rev ed 2006) (internal quotation marks omitted).

Thus, not every fact about what moves a person to act is character evidence. A proponent may use other-acts evidence to establish noncharacter facts about what might compel or induce a person's action. For example, evidence that a defendant committed a prior crime could be used to establish the defendant's motive for killing an eyewitness to that crime. That theory of relevance would not require any inferences about the defendant's violent character, generally; it requires only an inference that an ordinary person might naturally be motivated to conceal evidence of a previous violent act. *See id.* § 3:17 at 3-119 (providing example). Or evidence that a defendant unsuccessfully tried to poison a victim on two earlier occasions could be used to establish that the defendant wanted to kill the victim, which provides the motive for a subsequent poisoning. *See id.* § 3:18 at 3-131 (explaining that a prior uncharged "assault tends to show the defendant's hostile feelings toward the victim").

The other-acts evidence in this case is defendant's longtime (and current) membership and status in a street gang that was engaged in violent rivalries with other gangs, including the Crips. The question is whether the state's theory of relevance requires character reasoning.

The Court of Appeals concluded that it does. The court explained that the state had used the gang evidence to establish that defendant had "adopted [the] criminal tendencies and lifestyle" of the Woodlawn Park Bloods and, as a result, had "a propensity to commit violent acts generally and against Crips members in particular." *Herring*, 331 Or App at 212. According to the court, the state asked the factfinder to infer that defendant acted in accordance with those violent criminal tendencies when he was motivated to shoot at S. In reaching that result, the court did not consider the fact that S had killed defendant's brother, M. That fact, the court reasoned, was not part of either the state's theory of relevance for the gang evidence or the trial court's reasons for admitting the evidence as noncharacter evidence. *Id.* at 205-06.

We disagree. The Court of Appeals' characterization of the state's theory of relevance, in our view, overstates, on this record, what inferences are logically required for defendant's

gang membership to be relevant to establish his motive to shoot at S. The state offered the evidence of defendant's gang membership in the Woodlawn Park Bloods, and that gang's rivalry with the Kerby Blocc Crips, to explain defendant's hostility toward Crips, which included S. Defendant's gang membership provided defendant with a reason for hostility that would not exist without that membership. According to the state's theory and evidence, the interests of the two gangs conflict, so a longtime, senior member of the Woodlawn Park Bloods, such as defendant, by virtue of that status, has a reason to be hostile toward Crips. That chain of reasoning does not require one to draw any broad inferences about defendant's "criminal tendencies and lifestyle," nor any inference that defendant, because of his mere membership in the gang, has a *general disposition* toward violence. It requires only an inference that, by virtue of his status within a group that has interests opposed to another group, this defendant has a reason to be hostile toward members of the other group. Here, one may logically draw that inference without any inquiry into defendant's general character traits.

The state further argued that the violent nature of the rivalry informs the motive that can be derived from defendant's membership in the Woodlawn Park Bloods. The state offered evidence that rival gangs compete for power and notoriety, which they gain through their willingness to engage in violence, including acts of violence directed at rival gangs. And, similarly, individual gang members gain status and respect within their gang through their willingness to engage in violence for the gang. The state offered that evidence to establish how defendant's interest in the gang and in his status within the gang would be advanced through acts of violence directed at rival gang members, like S. But that theory does not depend on an inference about defendant's own character or disposition toward violence *per se*. Rather, the theory is that the circumstances of defendant's gang membership would provide a motive for the violent acts that occurred in this case regardless of whether defendant has a general inclination toward violence.

The state's theory of relevance is similar to the example above of offering evidence that a defendant committed a

prior crime to establish the defendant's motive for killing an eyewitness to that crime. The prior act is the source of the interest that would not exist otherwise. Similar reasoning can also be found in *Hampton*. In that case, the defendant was charged with assaulting a police officer while resisting arrest. 317 Or at 253. The state argued that the defendant's prior parole violation provided a motive for the defendant to resist the subsequent arrest. This court agreed, explaining that "evidence of defendant's parole status was relevant to show motive, and that motive was a relevant, noncharacter purpose in this case." *Id.* at 259. In the case before us, the state argued that defendant's status as a gang member provided him with a stake in the gang rivalry that he would not have had without that status. That reasoning does not attempt to create and rely on a character inference.

To be sure, the Court of Appeals is correct that evidence of membership in a violent gang poses some risk that a factfinder would infer that a defendant has a violent criminal disposition and is therefore more likely to have committed a charged violent crime, like the one at issue in this case. That risk, along with the risk that a factfinder will have a negative attitude toward gang members or will convict based on association, are properly considered in determining the risk of unfair prejudice under OEC 403. *See Davis*, 372 Or at 636 (risk that jury will misuse other-acts evidence considered under OEC 403).[6] But the fact that the evidence *could be* used improperly for character-based reasoning does not inform our assessment of whether the state's theory of relevance logically depends on character-based reasoning. Instead, assessing whether a proponent's theory of relevance logically depends on character reasoning requires examining the inferences that the proponent wants the factfinder to make to connect the evidence with the ultimate fact that the proponent seeks to establish. *Skillicorn*, 367 Or at 475. The state properly identified those inferences, and the trial

---

[6] Defendant cites those risks when arguing that the trial court erred in admitting the various items of gang evidence over his OEC 403 objection to each item. Defendant asks that this court reverse his conviction on that basis. The Court of Appeals did not reach those assignments of error. We decline to reach them as well and remand to allow the Court of Appeals to address them in the first instance.

court properly relied on those inferences when ruling that the evidence did not depend on character reasoning.

We further disagree with the Court of Appeals' reasons for not considering the fact that S had killed M. The Court of Appeals treated that fact as providing defendant with only a personal, non-gang-related motive for shooting at S. In doing so, the Court of Appeals' reasoning understated the degree to which the state's theory turned on the cycle of retaliatory gang violence, as opposed to only a more generalized hostility to Crips. The state repeatedly highlighted both the fact that M had been a member of the Woodlawn Park Bloods, including in its motion *in limine*, and the fact that gang rivalries frequently entail violent retaliations. Officer Asheim explained that, when a rival gang harms or disrespects it, a gang is expected to respond with violence. That dynamic leads to the cycle of violent retaliation that was central to the trial court's ruling admitting the evidence, which permitted the state to establish that "rivalry in the gang culture is expressed in terms of, 'He shoots at us, we shoot at him.'"

In this case, S was a member of the Kerby Blocc Crips and killed a member of the Woodlawn Park Bloods in 1997. The state theorized that, because defendant was a member of the Woodlawn Park Bloods, defendant had not only general hostility toward Crips, but also a specific gang-related reason to retaliate against S. Within the state's theory of relevance, that shooting advanced the interests of the Woodlawn Park Bloods and advanced defendant's own interests within the gang. Those interests stem from the particular circumstances of defendant's gang membership and not from his disposition. As a result, the state's theory of relevance did not attempt to use defendant's other acts to establish his character and that he acted in accordance with that character.

In concluding that the state offered a noncharacter theory of relevance for connecting defendant's gang membership to the charged crime, our decision is in accord with numerous jurisdictions and commentators that have reached similar results. *See, e.g.*, *State v. Nieto*, 129 NM 688, 696, 12 P3d 442, 450 (2000) (holding that evidence was offered for a

noncharacter purpose when used to establish that the defendant participated in homicide "to rise up in the ranks of the gang by performing a hit on its behalf"); *see also Johnson v. State*, 433 SC 550, 557, 860 SE2d 696, 700 (Ct App 2021) (collecting cases and stating, "Our holding that in appropriate cases, Rule 404(b) authorizes admissibility of logically relevant gang evidence to prove motive and intent aligns with the decisions of numerous state and federal appellate courts."); Imwinkelried, *Uncharged Misconduct Evidence* § 3:17 at 3-114-117 ("In homicide cases, and other violent crime prosecutions, the courts frequently admit uncharged misconduct to establish the defendant's motive," including evidence that "[t]he defendant was a gang member, and the victim was the member of a rival gang[.]").

Defendant argues that the trial court erred even if the state's motive theory relied on noncharacter reasoning. According to defendant, such gang evidence may be admitted to prove motive only when there is evidence that the defendant was motivated by gang-related interests. *See, e.g.*, *State v. Cox*, 258 Kan 557, 562, 908 P2d 603, 609 (1995) ("Gang evidence is only admissible where there is sufficient proof that membership or activity is related to the crime charged."); Laird C. Kirkpatrick, *Oregon Evidence* § 404.06[11][a], 228 (7th ed 2020) ("Evidence of hostility toward a class of persons can be a basis for admitting past acts demonstrating hostile motive, *when it can be shown that defendant was acting upon that motive in committing the charged act*." (Emphasis added.)). Defendant contends that the trial court erred in admitting the gang evidence because the state failed to meet that standard in this case. Specifically, defendant argues that the state failed to present evidence that defendant was motivated by gang-related interests to shoot S, rather than motivated by defendant's personal interest in avenging his brother's death.

The problem with defendant's argument is that, as we have discussed, the evidence in this case is sufficient to permit a factfinder to infer that defendant was motivated by gang-related interests. "Motive, like other mental states, often can be established only circumstantially." *State v. Turnidge (S059156)*, 359 Or 507, 514, 373 P3d 138 (2016).

There was sufficient evidence to establish that the alleged victim, S, was a rival gang member who had previously shot a member of defendant's gang and that defendant was a longtime member of the Woodlawn Park Bloods with the status of "OG." That is sufficient to support an inference that defendant was motivated, at least in part, to shoot at S to advance the interests of his gang or his own interests within the gang. The existence of defendant's personal, family-based motive does not undermine that conclusion. A person may be moved to act for more than one reason. *See, e.g.*, *Commonwealth v. Phim*, 462 Mass 470, 477, 969 NE2d 663, 669 (2012) ("[That the defendant's] gang affiliation was not the only possible motive does not require exclusion of the gang evidence. The prosecutor is entitled to present as full a picture as possible of the events surrounding the incident itself." (Internal quotation marks omitted.)).

We therefore reverse the Court of Appeals' conclusion that the state's theory of relevance for the gang evidence requires character reasoning. We express no opinion on whether individual items of evidence support that theory or should have been excluded under OEC 403.

B.  *Gun Evidence*

Defendant contends that the trial court erred in admitting the gun evidence found at codefendant's house— namely, a .40 caliber Glock that did not match the shell casings at the scene of the shooting, a Glock box for a .40 caliber gun that did not match the gun found at codefendant's house, as well as a .40 caliber Glock magazine and .40 caliber ammunition. Defendant contends that the trial court should have excluded evidence as irrelevant under OEC 401 or, in the alternative, as unduly prejudicial under OEC 403. We reject both arguments.

As noted above, whether evidence is relevant presents a question of law. *Naudain*, 368 Or at 150. "Evidence is relevant if it increases or decreases, even slightly, the probability of the existence of any material fact in issue." *Cox*, 337 Or at 485; *see also* OEC 401 (defining "relevant evidence"). As a result, "relevance is a very low threshold for the admission of evidence." *Naudain*, 368 Or at 149 (internal quotation

marks omitted). It "requires a rational relationship between the evidence offered and the substantive issues properly provable in the case." *Id.* at 150 (internal quotation marks omitted). Thus, "facts in issue can be established by reasonable inferences, but not through speculation." *State v. Hedgpeth*, 365 Or 724, 732, 452 P3d 948 (2019) (internal quotation marks omitted). "[T]he question is whether the factfinder reasonably could infer that a particular fact flows from other proven facts." *Id.* at 733.

The state satisfied that standard in this case. The state was attempting to prove that defendant was the person who shot a .40 caliber gun at S. That fact is made more likely by establishing defendant's access to a .40 caliber gun. That is what the state was attempting to establish with the gun evidence. Codefendant's empty Glock box could establish codefendant's prior possession of a now missing .40 caliber Glock, which is what defendant could have retrieved from codefendant's trunk immediately before the shooting. Those are reasonable inferences that do not approach the standard for improper speculation.

We also conclude that the trial court did not abuse its discretion when rejecting defendant's request to exclude the evidence under OEC 403. Under OEC 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." In the trial court and the Court of Appeals, defendant argued that, because the gun evidence could be connected to him only through nonrational, speculative inferences, the evidence had little probative value and presented undue risk of prejudice. Because we conclude that the evidence is relevant based on rational, nonspeculative inferences, we affirm the trial court's admission decision as a permissible exercise of discretion and affirm the Court of Appeals resolution of that issue.

The decision of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the Court of Appeals for further proceedings.